DUPONT v. WERTHEMAN et al.

Where D. gave a power of attorney to P., authorizing and empowering him to "sell and convey" certain real property belonging to D., and P. executed to V. a deed of the property, purporting on its face to be for the consideration of $8000, when in fact it was not executed upon any sale, or for any consideration paid, or agreed to be paid, but in order to enable V. to control the property, and keep off trespassers: *Held*, that the deed not being executed in pursuance of the power, did not pass any title to the grantee, and as between the attorney and grantee it was a nullity.

A power to "sell and convey" property is special, and must be strictly pursued.

No presumption of a ratification of an alleged sale under a power can be indulged, unless knowledge of the alleged sale, with its attendant circumstances, is brought home to the grantee of the power.

Where the following instrument was endorsed on a deed, viz.: "Know all men by these presents, that I, the within-named Avert M. Van Nostrand, of the city of San Francisco, State of California, in consideration of $8000, paid to me by Rodman M. Price, of the city of New York, have assigned to the said Rodman M. Price, and his assigns, all my interest in the within instrument, and every clause, article, or thing, therein contained, and do hereby constitute the said Rodman M. Price my attorney, in my name, but to his use, to take all legal measures which may be proper for the complete recovery and enjoyment of the assigned premises, with the power of substitution. Witness my hand and seal this 30th day of August, 1850. A. M. Van Nostrand;"—and such instrument was executed without the knowledge of the grantee named therein, and without any consideration therefor, and was not under seal: *Held*, that the instrument did not pass the legal title to the premises, and created only an equity in the grantee.

The purchaser of an equitable title takes the property, subject to all existent equities. He is not within the rule which protects a *bona fide* purchaser for value, and without notice, of the real or apparent legal title.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This is an action of ejectment to recover certain premises situated in the city of San Francisco. The facts of the case, as disclosed by the record, are these: In 1849, the plaintiff, Samuel F. Dupont, was the owner in fee of the premises, and being about to leave California, gave a power of attorney, on the 22d day of May of that year, to R. M. Price, empowering him " to sell and convey" the property. On the 22d day of December, 1849, Price executed a deed of the property to his clerk, A. M. Van Nostrand, which is in the usual form of conveyances, purporting to be in consideration of the sum of $8000, paid at or before its sealing and delivery, and soon after removed from the State. There was in fact no sale made to Van Nostrand, nor was any consideration paid, or agreed to be paid, by him. Subsequently, on the 30th day of August, 1850, Van Nostrand endorsed on the back of the deed, from Price to him, the following instrument:

" Know all men by these presents, that I, the within-named Avert M. Van Nostrand, of the city of San Francisco, State of California, in consideration of $8000, paid to me by Rodman M.

Price, of the city of New York, have assigned to the said Rodman M. Price, and his assigns, all my interest in the within instrument, and every clause, article, or thing, therein contained; and I do hereby constitute the said Rodman M. Price my attorney, in my name, but to his use, to take all legal measures which may be proper for the complete recovery and enjoyment of the assigned premises, with the power of substitution.

"Witness my hand and seal this 30th day of August, 1850.

"A. M. VAN NOSTRAND."

This instrument was executed during the absence of Price from the State, and without the knowledge of any person acting for him, and without any consideration, and was never delivered.

In December, 1852, Price, who was at the time residing out of the State, executed a power of attorney to one Edmund Scott, authorizing him to sell any real estate belonging to him (Price) in the State of California. Under this power, Scott conveyed by deed of bargain and sale, without covenants, a large amount of property to Payne & Dewey, of San Francisco, belonging to Price, including in the deed the premises in controversy; Payne & Dewey subsequently conveyed to the defendants, with special covenants of warranty against the claims of the plaintiff, and all persons claiming under him.

Price never gave any information to the plaintiff of his transfer of the property to Van Nostrand, but sent to the plaintiff $4000 on account of his property, but not as the proceeds of the sales of his lots, or of any of them. Whether it was for rents or otherwise does not appear. Price states in his testimony that he transferred the property to Van Nostrand, in order that he (Van Nostrand) might "authoritatively control it, and keep the squatters off," giving him the privilege of retaining it for $8000; that the property really belonged to the plaintiff then, and still does, so far as he (Price) knows; and that by his power of attorney to Scott he did not intend to authorize a sale of this property.

Van Nostrand says in his testimony that he did not make any payment to Price on account of the conveyance to him, for the reason that Price, as Dupont's attorney, conveyed the property in question to him, in trust for Mrs. Price, as he understood, but certainly for some member of his (Price's) family.

The defendant had judgment, and the plaintiff moved for a new trial, which was overruled. From the judgment, and the order refusing a new trial, the plaintiff appealed.

*S. M. Bowman* for Appellant.

I. The power authorized Price to sell. Under this power, Price could not give the property to Van Nostrand, nor in trust for himself or family. A deed, to be valid, must be in pursuance

of the power, and be within the power. If it be not, it is void. This deed, therefore, did not convey the legal title to Van Nostrand. The deed, in itself, was a mere nullity. As between Dupont and Van Nostrand, it always remained void—and so as to Price. But though a deed may be void as to one, it may still be good as to others; but those others are persons who deal with the legal title on the faith of the deed. In other words, a deed void as between the parties to the deed, may be good as to third persons—purchasers of the legal title, without notice of any defect in it.

But Payne & Dewey are not in this class. They never purchased the legal title at all. The rule in favor of a purchaser is but an exception to the principles of invalidity. It does not apply to the purchase of an equity, but only to the purchase of the legal title. 2 Story's Eq. Juris., § 1502.

Van Nostrand had only the paper purporting to be the legal title, and Price had only an assignment of the deed, which, as between him and Van Nostrand, was only an equity, and which, as against Dupont, was not even that.

This statement shows clearly that Payne & Dewey can not dispute that Dupont had the legal title; the deed to Van Nostrand was wholly void as to Dupont; it was just as void as to Payne & Dewey; it was, in fact, void as to all the world except one man, that man being the purchaser of the legal title without notice. Payne & Dewey were not such purchasers, and the deed, consequently, is a nullity, as to or against them. This leaves the fee where it was before—in Dupont; and this is all that is necessary to maintain this action.

No illustration can make plainer so clear a proposition.

It is an error to suppose the legal title was in Van Nostrand. It never was. The only thing that can be said is, that the form of the legal title—the appearance of it—was in Van Nostrand. But no title could be vested except in pursuance of the power. As to those who traded with Van Nostrand on this appearance, the policy of the law gives to this appearance the effect of reality—but as to them only. The deed is absolutely void as to the rest of the world, to whom this rule of policy does not apply. It is just as if a sheriff made a deed of land under an execution and levy, when he never sold it. The deed would be void, of course, it merely stating a sale when, in fact, there was none.

II. But, again : The assignee must show himself affirmatively to be a purchaser, for valuable consideration, without notice; and there must be no facts and circumstances to put him on inquiry. He must show, too, that he knew of a deed vesting the title, and made his purchase on the strength of a legal show of title in his vendor. 2 Story's Eq. Juris., § 1502 ; Vattier v. Hinde, 7 Peters, 252.

III. Here, the whole transaction showed no title in Price,

when Scott conveyed.   If it did, it showed a sale by Price to Van Nostrand, then a re-assignment on the same alleged consideration.   This was enough to put Payne & Dewey on inquiry. The assignment to Price was not recorded, nor the power of attorney to Price; nor does it appear that Payne & Dewey ever saw either, or acted in reference to them.   The deed to Payne & Dewey was from Scott, attorney for Price—authorizing a conveyance of property generally—Price's property—not this property in particular, or by designation.

Nor is there any proof of payment of consideration of any sort by Payne & Dewey; the recital in the deed is no evidence against the plaintiff.

IV.  Price had no equity at all as against Dupont; Van Nostrand had none against Dupont.   Consequently, nothing passed to the vendee of Price.   Price could not say to Dupont:  "Van Nostrand and I tried to get your title for nothing—gave nothing for it; I now claim it."   Nor are the defendants in any better position.

V.  The paper endorsed on the deed from Price to Van Nostrand, was not a conveyance of the fee :

1.  There are no words of grant; the word "assign" is not such a word.

2.  The assignment is not of the estate or property, but only of the instrument, or paper.   See 2 Hammond, (Ohio R.,) 223.

3.  The paper makes the assignee attorney for the assignor, showing that no legal estate was intended to be conveyed.

VI.  "Nothing can be plainer than that an assignee can take only such interest as his assignor has to transfer, and will be bound by all equities binding on the latter."  1 Vesey, Jr., 249; 1 Johns., 522; 7 Peters, 608; 4 Johns. Ch., 693; 1 Dev. and Bat., 14; 1 Paige, 319; 10 Ib., 369; 6 B. Monroe, 119; 1 Barb. S. C., 114; 2 Barb. Ch., 291; 17 S. and R., 287; 8 Ala., 920; 11 Paige, 469; Hop. Ch., 569; 9 Cowen, 316; 1 Sandford's Ch., 569; 3 Barb. Ch., 451; Ib., 647.

The rule is thus stated:  "One purchasing a mere equity is not within the technical rule which protects purchasers of a real or pretended legal title, and can have no right to require that other parties shall be deprived of their anterior rights for the sake of giving effect to his purchase."

" To entitle himself to this protection, the purchaser must not only be *bona fide* and without notice, and for valuable consideration, but he must have paid the purchase-money.  He must have purchased the legal title; for the purchaser of an equity is bound to take notice of, and is bound by, a prior equity."   2 Story's Eq. Juris., § 1508; 7 Peters, 252; 2 Sugden on Vendors, 1026, bottom page.

VII.  There was no ratification by Dupont.  Price did not report to Dupont any transfer to Van Nostrand.  It is true, Price

paid to Dupont $4000, on account of his property generally, but not on account of proceeds of its sale. Before Dupont can be presumed to have ratified the transfer, it must be shown that he knew of this pretended sale, and of all the circumstances. Paley, 143–4; 3 T. R., 757; 12 John., 300; 4 Mason, 296; Billings v. Morrow, 7 Cal., 171.

*Hall McAllister* for Respondents.

I. The conveyance of Samuel F. Dupont, by Rodman M. Price his attorney in fact, to A. M. Van Nostrand, on the 22d day of December, 1849, vested the legal title of the premises in controversy in said A. M. Van Nostrand. We contend:

*First*—That if respondents were *bona fide* purchasers for value, and without notice of any want of power in Price, it is clear that, as to them, the deed from Dupont to Van Nostrand must stand good.

*Second*—That irrespective of the question whether or not respondents were *bona fide* purchasers, etc., the deed from Dupont to Van Nostrand stands good here, and can not be avoided in an action of ejectment.

*Third*—That said deed can not be avoided in any action, either legal or equitable, until Dupont has restored, or offered to restore, the $4000, with legal interest, which he received from Price on account of the premises in controversy.

*First*—The ordinary language of a power of attorney, is "for me and in my name," etc.; here, the language is, "to sell and convey for said plaintiff," substantially the same thing. It is a power to Price to sell for and in the name of Dupont. Hellmann v. Potter, 6 Cal. R., 15; Pickering v. Bush, 15 East, 38; North River Bank v. Aymar, 3 Hill, 263.

*Second*—Concede, for the sake of argument, that the respondents are not *bona fide* purchasers for value, and without notice of want of power in Price, is, then, the deed from Dupont to Van Nostrand, as stated by appellant, a mere nullity? We deny that it can be avoided or treated as a nullity in an action of ejectment. The deed of an infant is not void, but merely voidable. So, also, the deed of a person *non compos mentis* is not absolutely void, but voidable, and conveys a seizin to the grantee. Wait v. Maxwell, 5 Pick., 217; Somes v. Skinner, 16 Mass., 348.

It is an ancient and essential principle of our jurisprudence, that an estate once vested by deed, patent, or statute, can not be collaterally impeached in ejectment, but only by a direct proceeding; and only in equity in the case of a deed—or by *scire facias*, etc., in the case of a patent, etc.

It is true that there are some *dicta* and a few decisions, to the effect that a deed may be collaterally avoided at law for fraud, but these are believed to be innovations upon a long series of well-considered adjudications, both in England and America.

Somes *v.* Brewer, 2 Pick., 183; Bates *v.* Graves, 2 Vesey, Jr.; Eastern Archipelago Co. *v.* Regina, 22 Eng. L. and E., 328; Jacobs *v.* Richards, 23 Eng. L. and E., 437; Bancks *v.* Ollerton, 26 Ib., 509; Attorney-General *v.* Champlain, etc., 21 Ib., 420; Stevenson *v.* Newham, 16 Ib., 402; Feret *v.* Hill, 26 Ib., 261; Stump *v.* Galey, 17 Ib., 357; Ford *v.* Douglass, 5 How., 143; Baznell *v.* Broderick, 13 Peters, 436; Bredsoe's Devisees *v.* Wells, 4 Bibb, 329; Jackson ex dem. McCarty *v.* Dolsen, 5 Johnson, 43; The Matteawan Co. *v.* Bently, 13 Barb., 641; Meakings *v.* Cromwell et al., 2 Sand., 512; Winans et al. *v.* Christy, 4 Cal., 70.

*Third*—The sale of Dupont, acting through his attorney Price, to Van Nostrand, was not a mere executory contract of sale, but it was an executed sale. Parker *v.* Robbins, 2 Denio, 136; Massom *v.* Bovet, 1 Ib., 69.

II. The deed executed by Van Nostrand, on August 30, 1850, to R. M. Price, was a good conveyance of the premises in controversy.

Appellant's counsel makes various objections to this deed, namely:

*First*—That it contains no words of grant—the word " assign " not being such a word.

*Second*—That the assignment was not of the estate or property, but only of the instrument or paper.

First objection: that it contains no words of grant—the word " assign " not being such a word.

No particular form of words is necessary to constitute a conveyance. It is sufficient if it can be gathered from the whole instrument that it was the intention that there should be a present bargain and sale.

The word used in the deed of August 30, 1850, is " assign," and we claim that this word is sufficient to convey the property.

" To assign—in conveyancing, to make or set over to another; to transfer; as to assign property or some interest therein." 1 Burrill's Law Dict., 101, under word " Assign."

"An assignment is properly a transfer or making over to another of the right one has in any estate; but it is usually applied to an estate for life or years." 2 Black. Com., 326.

"An assignment is properly the transfer of one's whole interest in any estate; but it is now generally appropriated to the transfer of chattels, either real or personal, or of equitable interest. * * Any words which show an intention to pass the property, will amount to an assignment. * * The operative words are assigned, transferred, and set over; and in the assignment of chattels, the words ' bargained and sold.' " Watkin's on Conveyancing, book 2, chap. 9, pp. 227, 228, 229, to be found in 20 Law Library; 1 Stephen's Com., 485.

" To assign: to make a right over to another, as to assign an estate." 1 Bouvier's Law Dict., 143, under word "Assign."

"The word 'assign' has various significations, and it must be taken according to the subject-matter. Its meaning is to set over or transfer." Watkinson v. Inglesby, 5 Johns. R., 391.

"The proper technical words of an assignment are 'assign, transfer, and set over.' * * But any other·words·which show·the intent of the parties to make a complete transfer, will amount to an assignment." 4 Greenl. Cruise, 88, § 18.

"Every estate and interest in lands and tenements may be assigned; as also every present and certain estate or interest in corporeal hereditaments." 4 Greenl. Cruise, 88, § 21.

"The proper words of a grant are *dedi et concessi*, hath given and granted; but any other words that show the intention of the parties, will have the same effect." 4 Greenl. Cruise, 51, § 37.

In Jackson v. Alexander, 3 J. R., 484, the words "I hereby make over and grant unto Daniel Herdson & Co., * * my right and claim on the public for 600 acres of land," was held a sufficient conveyance.

In Jackson v. Fish, 10 J. R., 457, it was held that the words "release and assign," in a deed, were sufficient to raise a trust or use, so as to constitute a valid bargain and sale of lands.

Second objection: that the deed from Van Nostrand to Price, of August 30, 1850, was not an assignment of the estate or property, but only of the instrument or paper.

To support this objection, appellant's counsel relies upon Lessees of Bentley's Heirs v. De Forest, 2 Ham. Ohio R., 222:

"This was an action of ejectment, the plaintiff having offered in evidence a deed conveying the premises in question from Adgato to Vanderbanach, with an endorsement thereon, subscribed by Vanderbanach, by which he assigned all his interest and title in the deed to Bentley, (under whom the lessors of the plaintiff claimed as heirs at law,) rested his case."

By the Court: "There never has been a time since the establishment of the territorial government, when the title to real estate could be conveyed by an assignment, endorsed on a deed. The ordinance for the government of the territory, provided that real estate might be conveyed by lease and release, or bargain and sale, signed," etc.

The decision in this case was substantially based on the· fact that the assignment did not contain "the operative words of a grant." The word used was "assign." And it appears that in Ohio this is not an "operative word of grant." The Courts of Ohio appear to be somewhat rigid as to what shall constitute an "operative word of grant." In Lessee of McCullough's Heirs v. Roderick, 2 Ham., 234, an instrument was offered in evidence, which was in these words: "I do hereby *assign* all my estate, real, personal, and mixed, to J. B. and J. K., in trust for the use of my creditors," etc.

This was the assignment of an insolvent debtor. The Court

Dupont *v.* Wertheman.

rejected the instrument, " on the ground that whatever may have been the effect of the assignment in Pennsylvania, (where it was made,) * * it could not pass the title to real property in Ohio, which must be transferred in pursuance of our laws."

This decision was clearly on the ground that the word " assign " was not in Ohio an operative word of grant.

The two cases of Lessee of Bentley's Heirs *v.* De Forest, and Lessee of McCullough's Heirs *v.* Roderick, are considered by the reporter as deciding the " same principle," to wit, that in Ohio the word " assign " is not an " operative word of grant."

We think we have already demonstrated that the word " assign " is sufficient in California to pass the title to land, and certainly the rigid rule of Ohio is not common to the other States.

In Porter *v.* Read, 19 Maine R., (1 Appleton,) 363, the following unsealed instrument, endorsed upon a deed of the demanded premises, was offered in evidence, viz.: " I hereby certify that I have this day transferred the within deed, with all its contents, to Harrison O. Read, provided," etc.

The objections raised to this instrument were, that it did not express a consideration, and that it was not under seal.

It was held insufficient to pass the legal title, upon the ground that it was not under seal. The Court say : " In this State, the legal title to real estate can not be conveyed by a personal contract not under seal, although it may be in some cases by the vote of a corporation." But it was nowhere intimated, either by counsel or by the Court, that the description of the property sought to be transferred was null or insufficient. Jackson *v.* Root, 18 J. R., 60 ; Krider *v.* Lafferty, 1 Wharton, 304.

*Jos. G. Baldwin* for Appellant, in reply.

The question is not whether a deed may be collaterally attacked for fraud, in ejectment. The question is this : If A gives B a power of attorney to sell his (A's) land, can A show that B did not sell it, but gave it away, or merely put the title in C, for his (B's) own benefit ? In other words, does a gift mean a sale, or does a power to the attorney to sell, mean a power to the attorney to settle the property on himself and family ? This is the plain question. It is no answer to say that the deed, on its face, imports a sale by the attorney : we can show there was no sale. We do this by parol, it is true. The deed was made by Price to Van Nostrand : and we supposed it never had been disputed that a party—not himself—signing a deed, but some one else signing it in his name—could show, by parol, that he had not authorized it—that it was a forgery—that it was an escrow—that it was procured by fraud—that it was never delivered. Why not at law as well as in equity ? If the deed does not really follow the power, it is void : does the mere fact that the attorney says it follows the power, make it good ? If so, a

deed gets its force, not from what the principal does, but from what the agent says; and this in favor of the agent himself! That this novelty is not law, any more than reason, we apprehend can be no serious question.

If this were the only point in the case, it would be useless to argue further. But the respondent says that Payne & Dewey were innocent purchasers of Price; and that Van Nostrand had conveyed to Price. Now, we say that Van Nostrand took no title—because the deed of Price to him was not in pursuance of the power, and he knew it : He could take nothing more than if he had stolen the deed, simply because the agent had no authority to make him the deed, under the circumstances : it was a fraudulent excess of authority ; the doing of an act which the agent had no right to do : therefore, passing nothing to the grantee. The legal title seemed to have passed—but, in reality, did not pass : any more than a deed to cheat creditors passes the title, at law or equity, against those creditors ; or deed of a sheriff passes title when he had no execution. The question is one of power to convey—which power is not satisfied by a mere form of conveyance—but by an actual compliance with conditions. And when the vendee knows there is no compliance, he gets no title because there is then no power to convey, and he knows it : It might as well be contended that if A makes a power to B—which is recorded—and then revokes it—revocation not recorded—but B sells to C, with full knowledge of the revocation, C gets a title—because all the papers seem to be regular ! This being clear, how do Payne & Dewey stand—do they stand in the shoes of Price ? What better title do they get than Price ? This depends on two other questions :

1. Are they purchasers of the legal title without notice ?

2. Does a quit-claim vendee, under a power of attorney from A " to sell all his " (A's) " property in California," take any property which A held as trustee ?

. As to the first question : Payne & Dewey bought of Scott, attorney for Price. Did Price have the legal title by virtue of the assignment on the back of the deed from Price to Van Nostrand ?—supposing that assignment delivered by Van Nostrand to Price—which we say was not done. This assignment is in the usual form of an assignment of a lease. We repeat that the word " assign " is not a word which alone will create a fee—and we refer to the cases cited by us, which we think maintain that opinion. But the word " assign " applies to the paper—not to the land. This assignment is found on the back of the deed ; it purports to be an assignment of the interest of assignor " in the instrument, and every clause, article, or thing, therein contained ;" and then appoints Price assignor's attorney to take all legal means, etc. The respondents contend that the words made a transfer of the land—whether under the term " clause," or " ar-

ticle," or "thing," they do not aver.  The absurdity of this
pretence is too manifest for serious argument.  That the word
"thing," following the other words, was not intended to mean
the land described in the deed, is manifest.  It was a mere cumu-
lative word, designed to show that the instrument, and all parts
of it, were assigned; and the fact that the assignee was made
attorney for the assignor, is conclusive to show that the fee was
not designed to pass; for then there could be no authority to
deal with the property in the name of Van Nostrand, from
whom all title and dominion had gone.  It is nothing that the
words " to his own use " are added; they may show an interest,
but they do not show a legal estate—a divestiture of the fee.

The learned discussion of words rather clouds than illustrates;
but the plain English of the few words in their context defies all
grammatical jargon to make them obscure.  The cases from
Ohio are in point.  See, also, Clark *v.* O'Margay, 2 Brevard, 134;
Towner *v.* Moore, 1 Brevard, 236, where this very question is
decided.

The fact of a consideration does not alter the case.  The con-
sideration was not paid, or ever intended to be; and, even if
paid, it is not perceived why a power of attorney may not be as
well given on consideration as without it.

It would be endless, as useless, to review the authorities cited :
though the counsel has shown considerable ingenuity in select-
ing so many which miss the point in controversy.  We answer
several of them by saying we do not say that the words of the
assignment might not create an equity :  We say that they do
not create a fee; and this is enough for us.

Passing from these questions to the facts.  Whatever circum-
stantial discrepancy may exist in the testimony of Price and
Van Nostrand, one thing is certain: that they both agree in
these essentials, viz. : that Price did not sell to Van Nostrand—
but, by an arrangement between them, Price put the property in
Van Nostrand's hands for his (Price's) own purposes; that Van
Nostrand, finding he could not hold any longer, sought to trans-
fer the control of the lot back to Price; that both of these papers
were without consideration; that Price, to keep Dupont quiet,
and avert inquiry, paid him $4000 " on account of his property,"
but not communicating to him the facts; that Dupont never re-
ceived this money with notice or knowledge of Price's acts, or
with intent to ratify or confirm his sale, or conveyance; and,
therefore, within the cases cited on the original brief, never gave
effect to this contrivance.  Billings *v.* Hall, 7 Cal. R., 1; 2 Kent
Com., 625; 15 Mass., 396.

What is it to Payne & Dewey, and their successors, whether
Dupont and Price have ever settled or not?  The question is
as to the original validity of the sale, and if originally inval-
id, (as we have shown,) the sale stands void until affirmed,

and can not be held affirmed by matter *ex post facto*, unless by some act of affirmance done with full knowledge, on the part of Dupont, of the facts; and this must be affirmatively shown.   Of this there is neither proof nor probability, while it is necessary there should be express proof.  It is not the case of a rescission of a contract for fraud, as the respondent vainly imagines, but the case of effect given to a contract, originally invalid, but afterwards confirmed; the confirmation stands in the place of the original contract.   A sale not within the power, is not less void because fraudulent, too!  I take it, that if A buys land of B by parol, and receives $100 purchase-money, the mere receipt of the money does not validate the contract; but especially if C agrees to give away or sell B's land, B is not bound by the sale by merely receiving money of A, unless it is shown B knew how the money was raised.   The confusion of the counsel arises from their not distinguishing between the case of a sale, invalid because not pursuing the terms of the power; between no contract at all, so far as Dupont is concerned, and a contract made by Dupont, but voidable for fraud; in which last case the party receiving something must restore it before he can avoid the contract; but Dupont, never having made this contract, is not bound by it until he indicates his election to be bound; and as no man can make a binding election until he has knowledge of all the facts, the affirmative is thrown upon the other side to show this knowledge before the election can be inferred.   There is nothing in this record to countenance the notion that Dupont ever had notice of this disposition of his land by Price; of Price's sale to Van Nostrand; especially of the terms of the sale; of Van Nostrand's transfer back to Price; or of Scott's—Price's agent—sale to Payne & Dewey: Price got nothing from Van Nostrand. If any sale was ever contemplated, it was a sale on credit—to be paid at the mere option of Van Nostrand—no note taken—no money paid—no binding contract to pay.   Price had no right to make any such contract.   In truth, there was no understanding, except for Price's own benefit.   And there is no presumption of acquiescence from silence—Dupont was out of the State—had no agent but Price, and Price's interest was to keep him in the dark.

No case can be found in which it has ever been held that an agent with limited authority, acting beyond the bounds of that authority, even at law or in equity, has got the title against the true owner; certainly not in favor of himself and those standing in his shoes.   See Chouteau *v.* Eckhart, 2 How. U. S., 344; 2 Ib., 284; 6 Mo., 106.

Most of the respondent's cases are cases in which the deed was collaterally attacked by third persons.   The Louisiana case is on a statute of that State.

If the power in this case had been apparently executed ac-

cording to its terms, the respondents might have said, if such were the fact, they were protected because they purchased on the faith that what seemed to be, was; but they stand in no such position. They saw no legal title in Price: at most he had a mere apparent equity; and this equity they were bound—as is the assignee of a chose in action or executory agreement—to look into and ascertain the true condition of. They took the place of Price: Price was in the shoes of Van Nostrand, and Van Nostrand and Price simply had no title at all, as against Dupont. If the contrary is held, it results that Van Nostrand got Dupont's land as a mere agent for Price, giving nothing for it, when the power under which he got it only authorized a sale of it; and Price would get from Van Nostrand the title, so conferred on him, to his principal's land, when he had only power to sell it for him. In other words, it would have to be held that an agent, empowered to sell, can change the title of his principal's property by the empty juggle of giving it to an accomplice for nothing—let the latter convey it to him for nothing—and then put his constituent at defiance! If he were to convey directly to himself for nothing, it would be void—but if he conveys indirectly to himself, it is good!

Many authorities might be cited to show that there is no material distinction in this country, and at this day, between law and chancery as to fraud and its effect upon contracts; but that is unnecessary—for here the question between these parties and their privies is, not whether there was fraud in the sale, but whether there was any sale. That though as between the attorney and third persons, purchasers of the legal title, the form of a sale is as good as the fact of a sale, yet as between the parties themselves and their privies there must be an actual sale; and that an agent can not, by his own *ipse dixit*, change the nature of a transaction so as to protect himself from all inquiry as to whether he pursued his power or violated it: whether he sold his constituent's property or gave it away to himself.

To conclude: The counsel have cited no case in which the word "assign," standing alone, has been held to pass a fee. The New York cases (see 10 and 18 Johns.) rest on the Statute of Uses. But we have no such statute. According to the argument, I see no difference between a legal and equitable estate in lands. But even there it is not shown that the word "assign" alone would pass the fee, especially if no such word as "heirs," showing an intention to sell the estate, were used. In the cases, the words were taken in connection with the manifest intent otherwise shown. The word "assign" meaning a mere transfer, and no defined interest, estate, quantum, or portion described—certainly is neither the natural or appropriate term whereby to convey or sell an estate. If I say to B, "I hand over to you my land,"—this is not in legal language a sale of it—it gives him

some control or dominion, but it does not indicate what; the same word might show dominion for a day, a year, or forever. It is not, therefore, a word of grant.  According to the argument, this would be a good deed:  "I assign A B my farm called A."  This rule will certainly introduce great simplicity in conveyancing, and it is a pity Chancellor Kent had not thought of it when he gave his form; but the rule goes still further: I may sell by merely writing on a deed "I assign the within instrument, and every clause, article, and thing, therein contained, to B;" and as, by the remarkable philology of our antiquarian linguists, land is a thing contained in a deed—a part of the deed, I suppose—the fee goes.

We contend that it is clear this was not the meaning :

1. Because the word "assign," written on the back of the deed, and expressly referring to the deed as the thing assigned, applies only to the paper.

2. Because the words used are the form of an assignment of a lease.

3. Because the natural signification of the words is as we allege.

4. Because the word "assign" is never applied to sales of land, but, when written on a paper, applies to the paper—the instrument.

5. Because, if a sale were intended, the word "heirs," or some other conveying the inheritance, would have been used.

6. Because the paper is (like Sutter's, in Mesick's case,) a power of attorney, which forbids the idea of a sale of the fee.

7. Because the design evidently was not to sell to Price, but to give the control to Price as the attorney of Dupont.

The true rule is, that where the fraud attaches to the execution of the deed, (as here, as being without authority,) or is cotemporaneous with the deed—as procured by fraud—it may be as well assailed at law as in equity.   23 Wend., 267; 14 Pick., 303; 18 Ib., 95; 14 Conn., 123; 4 Mass., 92; 7 Ib., 119; 16 Ib., 348.

But there could be no such question here, for the paper of Van Nostrand which we attack, was not under seal—it was no deed: and passed no title.

We think it unnecessary, however, to consume time by discussing this matter, for the reason that we contend that the paper is void, as evidence of a sale, when in truth there was no sale, but a mere gift; in other words, the attorney Price had no right to make it.   He was only authorized to sell, and he did not sell.

To remove the misapprehension of counsel as to our first point, I will briefly restate :  A deed, not in fact authorized, though in form good, passes no title whatever to the grantee cognizant of the facts : but such grantee may give effect to it by selling to a vendee ignorant of the fraud or want of authori-

ty, upon the principle that it is equitable to protect the innocent; the principal is estopped: the guilty grantee has only title for the one purpose of conveying it to an innocent purchaser; but this must be a purchaser of the legal title: Van Nostrand took no other title than this—strictly he took no title at all, any more than the purchaser of goods under false pretences : and he conveyed only an apparent equity to Price—not the legal title : hence Price never had against us the legal title, and could not convey it: but the legal title, not affected by this trick, is still in us.

We think the cases cited by us, as well as the reason of the thing, show conclusively that a quit-claim-deed made under a power of attorney, which power is general in its terms authorizing a sale of the principal's property, can not authorize a sale of any property which is not owned in proprietary right by the principal.  Under such a power the purchaser must, at his peril, see to the condition of the title; for the doctrine of *caveat emptor* applies in its full strictness to such a case.

FIELD J., delivered the opinion of the Court—TERRY, C. J., concurring.

The power of attorney from the plaintiff to Price, authorized a sale of the premises.  It did not authorize a gift of the property, or its transfer for any purpose, except in completion of a sale. The deed to Van Nostrand was not executed upon any sale.  No consideration was paid, or stipulated to be paid.  Both Price and Van Nostrand agree, in this respect, in their testimony.  Price states that he transferred the property in order that Van Nostrand might control it and keep off trespassers, giving to him the privilege of retaining it for eight thousand dollars.  He did not elect to retain it, nor did he offer to pay any portion of this sum. Van Nostrand states that the conveyance was made to him, in trust, for the wife, or some member of Price's family.  It is immaterial for what purpose the deed was given, as it was not executed upon a sale.  The power was special, and the deed not being in pursuance of the power, could not pass any title from the plaintiff to Van Nostrand.  Nor was there any ratification of this conveyance by the plaintiff.  He was not aware of its existence.  No information was communicated to him on the subject.  It is true $4000 was sent to him on account of his property generally, but not on account of the proceeds of any sale.  No presumption of ratification can be indulged, as knowledge of the alleged sale, with its attendant circumstances, was not brought home to him.  (Billings *v.* Morrow, 7 Cal., 171.)

As between the plaintiff and Van Nostrand, the conveyance had no more effect than if it had recited on its face that Price was only authorized to sell the property ; but, for reasons best known to himself, made the conveyance without a sale.  No parade of

authorities could give to such an instrument any operative force in favor of a subsequent purchaser. These facts existing, though not apparent on the face of the deed, the same result must follow as between the parties. As between them, it was a nullity. In appearance, it conferred title, while, in fact, no title passed.

The question of protection to a *bona fide* purchaser, without notice, relying upon the form of the deed, can not arise unless some conveyance was subsequently executed by Van Nostrand; and this involves an inquiry into the effect of the assignment endorsed on the back of the deed. It is as follows:

"Know all men by these presents, that I, the within-named Avert M. Van Nostrand, of the city of San Francisco, State of California, in consideration of $8000 paid to me by Rodman M. Price, of the city of New York, have assigned to the said Rodman M. Price, and his assigns, all my interest in the within instrument, and every clause, article, or thing, therein contained, and I do hereby constitute the said Rodman M. Price my attorney, in my name, but to his use, to take all legal measures which may be proper for the complete recovery and enjoyment of the assigned premises, with the power of substitution.

"Witness my hand and seal, this 30th day of August, 1858.

"A. M. VAN NOSTRAND."

This instrument was executed during the absence of Price from the State, and without his knowledge, and without any consideration therefor, and was never delivered. It is not under seal, and contains no words conveying any estate in the land. (Lessee of Bentley's Heirs v. De Forest, 2 Ham., 222; Porter v. Read, 19 Maine, 365; Wood v. Partridge, 11 Mass., 490; Clark v. O'Margay, 2 Brevard, 134; Towner v. Moore, 1 Brevard, 236; 4 Kent, 452.) It would seem a waste of time to cite authorities on the position that this instrument did not pass the legal title. And if we admit that the instrument was delivered, and the consideration paid, it could only create in Price an apparent equity, and the rule is well established that the purchaser of a real equity, even, is bound by a prior equity. The purchaser of an equitable title takes the property subject to all existing equities. He is not within the rule which protects a *bona fide* purchaser for value, and without notice, of the real or apparent legal title. He must take the imperfect title, with all its imperfections. (Chew v. Burnett et al., 11 Seargt. & Rawle, 393; Vattier v. Hinde, 7 Peters, 252.)

How, then, stands this case? Price, by the assignment, acquired an equity against Van Nostrand. The vendees of Price took only this equity, if anything. Upon inquiry, they would have found that the equity was only apparent; that the title was, in appearance, in Van Nostrand, but really in the plaintiff; that the conveyance to Van Nostrand, in fact, passed nothing, because not executed upon any sale in pursuance of the power

to Price. The purchasers from Price stood in his shoes, and as he had no legal title, he conveyed none, and as against the plaintiff, neither Price or Van Nostrand possessed either legal or equitable title.

It is unnecessary to pursue the consideration of the points of the appellant any further. The views we have taken go to the marrow of the case, and conclude the defence.

Judgment reversed, and cause remanded.

[Baldwin, J., having been counsel in the Court below, did not sit in the case.]