# PARTRIDGE, WELLS & Co.

## *v.*

## ISAAC CHAPMAN *et al.*

81    137
144    639

81    137
77a   182

81    137
180    64

81    137
86a   109

81    137
187   ²378
187   ²379

81    137
100a  ³641

1.  NOTICE—*of unrecorded deed by possession.* The actual, open and vis-ible possession of land by a grantee is equivalent to the recording of his deed, as notice of his rights to others.

2.  DEED—*of its delivery.* Where a party executed a mortgage on real estate to a person who was not present by himself or agent, and left the same for record, with directions when recorded to be sent to the mortgagee by mail, which was done, it was *held*, there was no delivery before the time it was mailed.

3.  PURCHASER—*who is a bona fide one.* Where a person purchased land without notice of any mortgage thereon, and paid the principal part of the price and gave his note for the balance, which was negotiated by the payee so as to cut off any defense, and the price paid was a full and fair consider-ation, it was *held*, that such person was a *bona fide* purchaser, and as such entitled to protection.

4.  RECORDING LAW. The doctrine that one can not be regarded a *bona fide* purchaser of land until he has paid the full amount of the purchase money, has no application under our recording laws.

APPEAL from the Circuit Court of Montgomery county; the Hon. HORATIO M. VANDEVEER, Judge, presiding.

Messrs. BLACKWELL & KINGSBURY, for the appellants.

Mr. E. LANE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that Isaac Chapman executed a deed to Wm. E. Baird, and also a mortgage to Partridge, Wells & Co., on the same piece of land, and the controversy is as to which deed is first in date or delivery, or whether Baird took open, visible possession before the mortgage was filed for record. The deed to Baird bears date the 19th day of March, 1872. The date was first written the 18th, but that was erased and the 19th written in its stead. The mortgage bears date on the 18th.

The justice of the peace who wrote the deed and mortgage and took the acknowledgment of each, swears that the deed was made on the 18th, and was executed before the mortgage, and that he called Chapman's attention to the fact, that the mortgage embraced a part of the land he had conveyed by the deed. Chapman replied that it did not matter, as the mortgage would stand only a short time. Baird swears that the deed was executed and delivered to him on the 18th, and his wife's father and her sister both swear they had it in their hands and read it after Baird returned home, on the 18th, at his house. On the other side, Chapman and one of his sons swear it was executed on the 19th, and another son swears that Baird told him it was executed on the latter date.

On reading this evidence we are strongly impressed with the truth of the evidence that the deed was in fact executed and delivered on the 18th. The justice of the peace, who has the best means of knowing all the facts in regard to the execution of both instruments, as he drew and took the acknowledgment to both, is clear and distinct in his statement, and he is disinterested, and supported by the evidence of two other disinterested witnesses, whose evidence bears the impress

of truth, as well as by Baird himself. The evidence of Chapman is positive, and so is that of his son, who swears that the deed was made on the 19th, but he does not explain in what manner he learned the fact; whether he was present when the instruments were made, or whether he learned the fact from the date of the deeds, or otherwise. Nor does the other son say when, where, or under what circumstances, the conversation to which he swears was had. All the evidence on this point considered, we are clearly of opinion that there is a decided and clear preponderance of evidence that the deed was executed on the 18th, and before the mortgage. It is so decided that we are impelled by its force to believe that it has priority in its execution.

The mortgage was delivered by Chapman to the recorder on the 23d day of March, 1872, to be recorded, and he mailed it, directed to Chapman, on the 26th, after spreading it on the record. It was received by Chapman and sent to the mortgagees in New York. They returned it to Chapman to have it executed and acknowledged by his wife, which she did, and it was again sent to the mortgagees by Chapman. It was thus spread upon the record and filed with the recorder before Baird had his deed recorded. This is claimed to give the mortgagees the priority of claim over Baird, under the recording acts. But to this it is answered, that Baird removed upon the premises in controversy, with his property on the 19th, and with his family on the 20th of March, three days before the mortgage was filed for record. On carefully considering all the evidence on that question, we entertain no doubt that he was in full and complete possession of this land, both by his property and his family, on the 26th of March, and before the mortgage was recorded. The preponderance of the evidence, we think, clearly establishes this fact.

Then, what effect did his taking such possession have upon the rights of the parties? It has been long and uniformly held, that the entering into the actual, open and visible possession of the land conveyed, by the grantee, is equivalent to the recording of his deed. See the case of *Cabeen* v. *Breckenridge,*

48 Ill. 91, and the cases therein cited. This case, we think, clearly falls within the rule announced by those cases, and is governed by them.

Again, it appears that appellants negotiated and arranged directly with Chapman for the execution of this mortgage, without the intervention of an agent. Hence there could have been no delivery of the mortgage to them before it was received by them by mail, and sent them after the 26th of March. Chapman could not deliver the deed to himself for the mortgagees, nor did he deliver it to the recorder for them. On delivering it to the recorder he was directed to return it to Chapman by mail, which he did on the 26th of March. Up to this time, and until he mailed it to the mortgagees, some time after the 26th, it was under his control, and not that of appellants. It then follows, that, whether Baird's deed was first executed or not, it was first delivered and was the first to pass the title. Having acquired actual possession before appellants' mortgage was delivered, they took as subsequent purchasers, and are chargeable with notice by Baird's prior possession and title. So that, whether Baird's deed was, as a matter of fact, first executed, can not change his right to protection.

The evidence, we are satisfied, shows that Baird was a *bona fide* purchaser for value. He did not have notice of the mortgage. This, we think, is manifest from the fact that he did not at once record his deed. Had he been apprised of the fact he would, most assuredly, have filed it for record before the 23d of March, and would thus have put the question at rest. This fact speaks volumes against the theory that he purchased with notice. Had it been a contrivance to defeat appellants' mortgage, we can not but believe that he would have hastened to place his deed on record without delay.

He also seems to have released lands in Christian county to Chapman, estimated at $1500, and gave his notes for $700, of which $200 had been paid, and the balance of the notes Baird swears he had learned were in a bank. If so, it may be safely inferred that they had been negotiated by Chapman, and if so,

then he had received the full consideration for the sale of the land. Nor is it shown that the price paid was not a full and fair consideration for the land.

It is urged that a person can not be considered a *bona fide* purchaser until he has paid the full amount of the consideration. This doctrine has no application under our recording laws, and even if it could be so held, we have seen that the consideration here was received by the grantor, and it would be most inequitable to compel Baird to pay the outstanding notes and lose his land likewise.

In any view we have been able to take of the case, we are unable to see that the decree of the court below does not do complete justice between the parties, and it must be affirmed.

*Decree affirmed.*