## J. W. Jones v. Daniel Glathart, Agent, and The Massillon Engine and Thresher Co.

1. TRIAL BY COURT—*How Regarded on Appeal.*—Where no propositions of law are submitted to the trial court, it must be presumed that it applied the law correctly; its findings are entitled to be regarded with as much favor as the verdict of a jury.

Jones v. Glathart.

2.  APPELLATE COURT PRACTICE—*How Bill of Exceptions Construed.* —A bill of exceptions is the pleading of him who presents it, and is therefore to be taken most strongly against him.

3.  BURDEN OF PROOF—*In Replevin.*—In replevin, where the defendant pleads property in himself, the burden of proof is on the plaintiff to show that the property replevied and delivered to him, under the writ, was his own property.

4.  CHATTEL MORTGAGES—*Negligence in Not Ascertaining if Mortgage is Docketed Does Not Prevent Rescission.*—Whether a mortgage was docketed is not a fact which the mortgagor nor the mortgagee would necessarily know, and in not knowing these facts the parties may both be negligent, but such negligence will not prevent a right to rescission, if it appears that the other party has not been injured by reason of the claimed negligence.

5.  SAME—*Prior Mortgagee is Charged with Notice.*—A prior mortgagee is charged with notice of the terms upon which the purchase of mortgaged property is made, and with the knowledge of all facts of which he is put upon his inquiry.

·6.  SAME—*Purchaser of, When Not Acting in Good Faith.*—Where the purchaser of a chattel mortgage and note acted in bad faith, and either had actual notice, or might have had notice of a prior mortgage had he not willfully or negligently shut his eyes against those lights which, with proper observation, would have led him to knowledge, he must suffer the consequences of his ignorance, and be held to have had notice, so as to taint his purchase with fraud.

7.  SALES—*Who is a Bona Fide Purchaser in Good Faith.*—To make a *bona fide* purchaser in law as well as in fact, there must, before notice, be either an actual payment, or the surrender or substitution of rights in such a way that if the consideration fails, the situation of the parties would not permit a plea of failure of consideration to be interposed by the claimed *bona fide* purchaser.

Replevin.—Appeal from the Circuit Court of Richland County; the Hon. PRINCE A. PEARCE, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

Statement.—On the 9th of April, 1900, one Robinson entered into a written contract with appellee, Massillon Engine and Thresher Company, for the purchase by him of a threshing outfit, consisting of a separator, a stacker, a weigher and conveyor, and a Russell traction engine. Robinson was, and continued to be, at the time of the transactions hereafter stated, a resident of Mt. Erie township, Wayne county, Illinois. The contract of purchase contained the following provision:

"As a condition hereof, it is fully understood and agreed
*   *   *   that title to said goods shall not pass until settle-
ment is accepted by the Massillon Engine and Thresher Co."

The threshing outfit was shipped by rail to Olney, Illi-
nois, in care of the local agent of the thresher company
there, through whom the contract of purchase was made.
The engine and other parts of the outfit arrived at Olney,
either in the evening of the 2d or in the morning of the 3d
of May, 1900. The goods were unloaded on the station
platform and remained there until taken away by Robin-
son, some time during the 7th day of May.

On the 3d of May, 1900, Robinson made and signed a
series of notes to the thresher company, aggregating the
sum of $2,040; and on the same day executed a chattel
mortgage to the thresher company covering the Russell
traction engine, and the other parts of the threshing outfit,
to secure the notes. Some time during the 7th of May
Robinson had a settlement with the thresher company; the
notes and chattel mortgage were delivered to it, and Robin-
son took possession of the threshing outfit, with the consent
of the Massillon company. The certificate of acknowledg-
ment was not signed by the justice of the peace who
attempted to take it, and no entry was made by him on his
docket, as required by law. The mortgage was recorded
May 10, 1900.

On the 3d of May, Robinson gave his note to one Rawland,
under the name of "D. Nalwar," for the sum of $163.31,
due August 1, 1900. To secure this note he executed a
chattel mortgage to one Rawland, under the name of "D.
Nalwar," covering the Russell engine and another engine
of little value; the mortgage was dated the 2d of May, 1900.
Under the contract of purchase Robinson was to pay the
freight on the threshing outfit, and the evidence is that he
used the money which was advanced by Rawland for such
purpose. The mortgage was duly acknowledged on the
7th of May, the day the engine was delivered to Robinson;
an entry thereof was made on the docket of the justice of
the peace who took the acknowledgment, and the mortgage

was filed for record on the same day, at 5:10 o'clock P. M. On the 31st of July, 1900, the note to Rawland being unpaid, he and Robinson filed an affidavit for the extension of the chattel mortgage to the 1st of October, 1900.   The evidence is satisfactory, that while the "Nalwar" note and mortgage were dated before the 7th of May, the transaction by which the money was loaned was not really closed until that day, when the mortgage was in fact delivered; whether the "Nalwar" mortgage was delivered before or after Robinson got title to the engine is left uncertain by the evidence.

A day or two before the 1st of October, Rawland assigned his note and mortgage to one J. S. Howard, who, it is claimed by appellant, paid in cash the full sum of the note. On the 1st of October, 1900, the note being unpaid, Howard placed it and the chattel mortgage in the hands of appellee Glathart, who is a constable, with directions to foreclose it.   Glathart took the engine, without objection, from Robinson; it was advertised and sold, Howard becoming the purchaser for the amount of the debt, interest and costs, aggregating about $200.   After the sale Glathart delivered the engine to a son of Robinson, who agreed to hold the property for Howard.   On the 10th day of October, A. D. 1900, Howard sold the engine to appellant, Jones, for the sum of $500; in payment he gave his note to Howard for that amount, payable August 1, 1901, and to secure the payment he executed a mortgage back to Howard, which is admitted to be in due form as an instrument.   This mortgage was filed for record on the 17th of October, 1900.

Appellant used the engine in threshing for himself and for other parties, until the latter part of October of that year, when he leased it to Robinson, the original purchaser, for the sum of $3 per day.   Some time during the last days of October, 1900, the thresher company placed their mortgage in the hands of appellee Glathart, and directed him to take possession of the Russell engine.   He found it in Richland county and took it from the possession of Robinson.   Appellant then brought this suit in replevin, against

appellees, to recover the possession of the engine.  The declaration was in the *cepit*, and in the *detinuit;* the pleas were *non cepit, non detinuit*, property in the defendant Massillon Thresher Company, and denying the right of property in the plaintiff.  Issues were formed on the pleas, a jury was waived and the cause was tried by the court; there was a general finding for the defendants.  No propositions of law were submitted to the court to be held as the law of the case.

II. G. MORRIS and R. S. C. REAUGH, attorneys for appellant.

R. B. WITCHER, attorney for appellees.

MR. JUSTICE BIGELOW delivered the opinion of the court.

Where no propositions of law are submitted to the trial court, it must be presumed that the court applied the law correctly; the finding of the court is entitled to be regarded with as much favor as the verdict of a jury.  Allison v. Leslie, 40 Ill. App. 441; Alexander v. Alexander, 52 Ill. App. 195.  On a record like this, the only question open for review is one of fact, whether the evidence sustains the finding of the court.    Smith v. Dauel, 29 Ill. App. 290.    Under these authorities many of the questions discussed by both parties to the record are not reviewable.

It is an elementary rule of appellate procedure, that he who alleges error in a judgment must show it, and that the bill of exceptions is the pleading of him who presents it, and is therefore to be taken most strongly against the pleader.  O'Berne v. Robbins, 44 Ill. App. 76; Casey v. Harvey, 14 Ill. 44; McFarland v. Claypool, 128 Ill. 397.  And it is a rudimentary principle that the burden of proof is on the appellant to show that the property replevied and delivered to him, under the writ, was his property.  McFarland v. McClellan, 3 Ill. App. 295.

By the provision of the contract of purchase quoted, it is evident that the thresher company did not intend to part with the title to the engine, until some further act was done between itself and Robinson; and by the shipment of

the threshing outfit to its local agent, it is equally evident that the possession of the engine would not come to Robinson until some further act was done between the parties. It would seem self-evident that Robinson's giving a chattel mortgage which was invalid as to every one except the immediate parties thereto, would hardly, by the deliberate act of the parties, be deemed a " settlement accepted," particularly when the mortgage was for the entire purchase price of the outfit. Unless both Robinson and the thresher company deliberately chose the invalid chattel mortgage in full performance of the executory contract of sale, they made a mutual mistake, which was not necessarily one of law. Hunt v. Rousmaniere, 1 Pet. 1; Holmes v. Hall, 8 Mich. 69. In favor of the correctness of the judgment which we are reviewing, it must be presumed that the trial court found that there was a mutual mistake of fact, between the parties, when Robinson delivered the chattel mortgage to the thresher company, unless the bill of exceptions makes it affirmatively appear that there is error in such finding. For anything that appears in the bill of exceptions, both Robinson and the thresher company believed that the mortgage was properly acknowledged and docketed when the settlement was made, for the justice of the peace did in fact make an attempt to take the acknowledgment made by Robinson, and we can not believe he was knowingly engaged in a scheme to defraud the thresher company.

Whether the mortgage was in fact docketed, was a matter that neither Robinson nor the thresher company would necessarily know, for such an act was primarily the act of the justice of the peace. In not knowing these facts the parties may both have been negligent, but such fact would not prevent their belief that the assumed facts existed; and this is one of the ways in which mutual mistakes arise. 2 Pomeroy's Eq. Jur., Sec. 854. And such negligence will not prevent the right of rescission, if it appears that the other party has not been injured by reason of the claimed negligence. Ib., Sec. 856.

As against Robinson, for anything that appears in the

bill of exceptions, the thresher company had, and did exercise the right to rescind the contract of sale apparently consummated on the 7th of May, thereby reclaiming the engine; no injury resulted to Robinson by reason of the failure of the justice of the peace to sign the certificate of acknowledgment or to enter the property on the docket.

Is the thresher company in a position to rescind the executed contract of sale apparently made, so far as Nalwar and Howard are concerned?

Nalwar, whose real name is Rawland, (being that name spelled backwards, omitting the final "d," which he used as an initial for his first name,) testifies that he is in the habit of loaning money on chattel mortgages, and that he used the "Nalwar" because he did not want the public to know whose money he was using. Rawland, by his signature, witnessed the agreement between Robinson and the thresher company, which provided, "the title to said goods shall not pass until settlement is accepted." He fails to say in his testimony, whether he read the contract or not. That he was in a position to learn the exact terms of the agreement, had he inquired for them, we do not doubt. He testifies that Robinson borrowed the money secured by the "Nalwar" mortgage, to pay the freight on the engine, and that before he loaned the money, he saw the engine at the depot. At that time he learned, or was in a position to learn, that the engine had not been shipped direct to Robinson. He was not willing to loan the money to Robinson unless he got mortgage security, for so small an amount, showing the estimate he placed upon Robinson's financial ability. He knew that the only way in which Robinson could get title to the engine was through the thresher company, who up to that time had neither invested him with the title to the engine, nor intrusted him with the possession thereof. From that fact he knew that the thresher company meant either to get cash for their property or a mortgage, which should be valid against himself and all others, to secure the purchase price; and that unless they got one or the other, the engine would never be

Robinson's.    It was the very condition upon which the title and the possession would come to Robinson; he was not the owner and probably never could be, unless the conditions were fulfilled.    Rawland knew that a man who could not pay freight on property, was in all probability in no position to pay the purchase price of such property.    Inquiry from either Robinson or from the thresher company's local agent would have furnished him with full knowledge of such fact, if indeed he was not already fully informed. Unless, then, the thresher company did some act which misled Rawland into taking the mortgage, he is not a *bona fide* mortgagee as against the thresher company, under section 4 of the chattel mortgage law.    The evidence fails to show that Robinson was even in possession of the engine when Rawland advanced the money on May 7th.    The evidence fully justifies the inference that Rawland took his mortgage relying entirely on his ability to get it acknowledged and docketed within the letter of the law, and then get it first recorded.    He endeavors to explain why his note was dated on May 3d, but fails to explain why the mortgage was dated on the 2d.    As a witness to the thresher company's mortgage he had notice that it was dated on the 3d, and did he antedate his mortgage after the receipt of such knowledge, leaving the note to bear the old date?    The evidence justifies the conclusion that he did so.    "It is nevertheless only when a chattel mortgage, acknowledged and recorded as the statute required, is *bona fide*, that it becomes 'good and valid from the time it is filed for record,' etc. (R. S. Chap. 95, Sec. 4.)"    Niepschield v. Reuss, 92 Ill. App. 636.    In Montgomery v. Keppel, 75 Cal. 128, it was expressly decided that a prior mortgagee is charged with notice of the terms upon which a purchase of mortgaged property is made, when, pending his negotiation with the mortgagor, he acquires knowledge that the title is in a third person, with whom the mortgagor is negotiating for the purchase, which was afterward consummated by the delivery of a deed to the mortgagor and the execution back to the grantor of a mortgage for the purchase money.    The

fact that the subject-matter in that case was land and not chattels, we do not regard as a distinguishing factor; for the case was not decided upon the theory. that the mortgage was one for the purchase money, or that there was only an instantaneous seizin in the mortgagor as pointed out in Blatchford v. Boyden, 122 Ill. 657, 668. The case was decided on general principles of the law of notice, applicable alike to dealings in lands or chattels. A person is chargeable with knowledge of all facts of which he is put upon inquiry. Rowland was no more in a position to acquire a first mortgage on the property against the thresher company, than if he had expressly agreed that his mortgage should at all times be subordinate to the other; and he must be held to have known that if for any reason involving a mutual mistake of fact, the thresher company invested Robinson with the title to the engine, and failed through such mistake to get a first mortgage enforceable against third parties, then as against Robinson, and all others who knew, or are chargeable with knowledge of the origin of the transaction, the title to the engine would be defeasible, and the thresher company would have the right to rescind the contract and reclaim their property. In commenting upon a statute similar to our own in its provisions as to good faith, a learned author has said:

"The object of the statute is to protect those who have acquired rights under circumstances which would render them liable to be defrauded unless so protected." Jones on Chattel Mortgages, Sec. 313.

This statement of the law is made in discussing somewhat different matters but we deem it applicable to the facts of the present case. The evidence justifies the inference that Rawland willfully abstained from knowing anything about the thresher company's prior rights and claims; the court must have found that he was not a *bona fide* mortgagee, as against the thresher company, and we think the evidence is amply sufficient to sustain the finding. It is not material whether Robinson was also animated by a lack of *bona fides;* in such event the rights of the thresher company would only appear the more clearly.

Jones v. Glathart.

The question then presents itself whether the assignment of the " Nalwar " mortgage to Howard before the maturity of the note has placed the engine in such a position that the thresher company can not exercise the right of rescission against Howard.    In the first place, the mortgage is not negotiable though secured by a negotiable note.    Bryant v. Vix, 83 Ill. 11.    The note may be transferred free from equities—the assigned mortgage remain a chose in action. Howard is a lawyer; his legal knowledge becomes an important factor in determining his relation to the property. He testifies that before he purchased the " Nalwar " mortgage, he personally examined the records and found the Massillon mortgage covering the same engine; that he had written to the circuit clerk about " the recording of the Massillon company's mortgage, and he wrote (back) that there was no mortgage on the record at the time my mortgage was recorded; " that " he ascertained from the circuit clerk of Wayne county, that the $163 mortgage preceded the Massillon mortgage on the record three or four days." From his personal examination he knew or could have known that this mortgage was for the sum of $2,040; he was in a position to know that the thresher company's mortgage contained a covenant that the property was free from all incumbrances; that its date was about the same as that of the mortgage which he was about to purchase.    He testifies that he saw the entire threshing outfit when it was delivered to Robinson early in May.    The evidence makes it plain that he purchased the claim against Robinson on the strength of the chattel mortgage and not on Robinson's general financial worth; he bought a day or two before the mortgage would become void as to third parties, which was certainly a circumstance to arouse the attention of a lawyer who already had actual knowledge of the Massillon mortgage.

When he paid his money he was in the same position as if the thresher company had come to him and told him that they had a first claim on the engine, notwithstanding the record, and yet he makes no inquiry either from Rawland,

Robinson, the local agent of the thresher company, or from the company itself, whose address he could easily have ascertained. He disregards all such matters and simply takes the apparent priority of the record for his guide, all the time knowing the other sources of information, and knowing his own estimate of Robinson's financial ability. The inference is almost irresistible that he knew Rawland was offering his mortgage for sale at the time he did, in the hope to escape some taint in that mortgage, with reference to the rights of the thresher company; or at least there is nothing in the bill of exceptions which negatives the court's finding in that regard.

What would have been the position of Howard had he bought without the actual knowledge of the thresher company's mortgage and without knowledge of facts that led to its execution, it is not necessary to consider; with these things in his mind when he purchased, the assignment of the " Nalwar" mortgage was in law subject not only to the equities between Rawland and Robinson, but also to equities in favor of the thresher company. Sumner v. Waugh, 56 Ill. 531, 539.

So far as Rawland and Howard are concerned, the language used by Justice Caton in Doyle v. Teas, 4 Scam. 250, is pertinent:

" Each case must be governed by its own peculiar circumstances; and where the court is satisfied that the purchaser acted in bad faith, and that he either had actual notice or might have had notice had he not willfully or negligently shut his eyes against those lights which, with proper observation, would have led him to knowledge, he must suffer the consequences of his ignorance and be held to have had notice, so as to taint his purchase with fraud in law. It is sufficient if the channels which would have led him to the truth were open before him, and his attention so directed that they would have been seen by a man of ordinary prudence and caution. The law will not allow him to shut his eyes when his ignorance is to benefit himself at the expense of another, when he would have had them open and inquiring, had the consequences of his ignorance been detrimental to himself and advantageous to the other."

One who has been put upon inquiry of a conflicting claim

and title can not protect himself by merely showing that he examined the records. 2 Pomeroy's Eq. Jur., Sec. 602. Had the evidence shown that Howard or Rawland had pursued in good faith sources of information which each one knew for himself and which were readily accessible to each of them, and that they had failed to acquire any knowledge of the prior rights of the thresher company, they would have been protected. 2 Pomeroy's Eq. Jur., Sec. 604–8.

After Howard bought the property at the foreclosure sale, he sold it to appellant for $500; Jones gave his personal note for $500, and to secure the payment of the note he executed a mortgage on the engine for the purchase price to Howard. Having heretofore determined that only a defeasible title to the engine passed to Robinson, Rawland and Howard, it devolved on appellant to show, in addition to being a *bona fide* purchaser, that he paid actual value for the engine; and this he must show not merely by proving that he has given his own promissory note, which, for anything that appears in the bill of exceptions, is still in the hands of the payee, Howard, where its negotiation may be enjoined if appellant's title to the engine should fail. Brown v. Welch, 18 Ill. 343; Keyes v. Test, 33 Ill. 316; Baldwin v. Sager, 70 Ill. 503; Partridge v. Chapman, 81 Ill. 137; see also 2 Pomeroy's Eq. Jur., Sec. 691, 750, 751.

To make one a *bona fide* purchaser in law as well as in fact there must, before notice, be either an actual payment, or the surrender or substitution of rights in such a way that if the consideration fails the situation of the parties would not permit a plea of failure of consideration to be interposed by the claimed *bona fide* purchaser. Appellant has shown himself not to be in that situation although his actual good faith is gathered from the record.

To the suggestion that Rawland and Howard stand in the same position as if they had had actual notice that the thresher company had a prior mortgage it is replied in substance by counsel for appellant that even if Rawland and Howard had had actual knowledge of the claimed prior mortgage it would have no effect on them so long as the

mortgage was not docketed and acknowledged as required by law. For this position a number of cases are cited; but in none of them is the principle held to the full extent contended for. Such a contention wholly ignores the question of the mortgagee's *bona fides* in taking his mortgage. In some of the cases cited the question arose between successive mortgagees of the same property; but the question of good faith of the subsequent mortgagee was either not litigated or was admitted as a question of fact. Such cases are Frank v. Miner, 50 Ill. 444, and Sage v. Browning, 51 Ill. 217. In other cases the question arose between the holder of a mortgage invalid as to third parties, and judgment creditors who had actual notice of the invalid mortgage; and the court held that there was no want of good faith in the creditor in getting satisfaction out of property not mortgaged according to law, the trend of the reasoning being that as to third persons there was no lien created by the invalid mortgage, and that therefore the lien of the execution attached, notwithstanding the mortgage, and that actual notice did not have the effect to cure a requirement of the law. Such cases are Porter v. Dement, 35 Ill. 478, and McDowell v. Stewart, 83 Ill. 538. In still other cases where the property was covered by an invalid chattel mortgage it has been held that a creditor with actual notice would not be prevented from taking such property in payment of his claim, if done in good faith. Long v. Cockren, 128 Ill. 29.

Living up to the letter of the chattel mortgage act is not a substitute for good faith, for the statute requires this element also in the obtaining of the mortgage. As stated by the Supreme Court in Fuller v. Paige, 26 Ill. 360, " Good faith and absence of fraudulent intent must characterize all contracts." Any other doctrine in construing the chattel mortgage act, would make the statute a breeding place of fraud; a means to accomplish the very things it was designed to prevent.

But the important distinguishing feature between all of these cases and the one at bar is, that in the present case both Rawland and Howard knew, or were chargeable with

knowledge, that the title of the mortgagor was defeasible; in the cases cited, there was an indefeasible title in the mortgagors, and the notice related merely to a lien, which the statute has declared to be invalid, unless certain statutory requirements are complied with.

There is one matter which it is incidentally proper to refer to in order to fully dispose of this case. Whether the thresher company proceeded in its defense to the replevin on the ground of the rescission of the contract or in reliance on its mortgage can not be satisfactorily determined from the bill of exceptions, for no propositions were submitted to the court to be " held " as law of the case. If, then, the evidence, on any reasonable construction of it, furnishes support for the claim that the thresher company was entitled to the immediate possession of the engine, instead of the plaintiff, then it is the duty of this court to uphold the judgment of the court below. Whether a rescission could be had without tendering back the notes, and the mortgage of the Massillon company, before the trial, is a question not presented by this record, for it is not shown by the bill of exceptions, but that they were tendered back at such time. We will not presume error, if error there was, in that regard.

It must be admitted that the scheme was cunningly devised and skillfully executed, but its intent can not be allowed to prevail and thus circumvent the law itself.

The evidence is ample to justify the judgment rendered; the record leaves the case in such a position that we are unable to say that the Circuit Court did not apply the law correctly, and accordingly its judgment is affirmed.