THE DAVENPORT CENTRAL RAILWAY CO. v. THE DAVENPORT GAS LIGHT CO.

|43  301|
|113  317|

1. **Estoppel**: STREET RAILWAY: MISREPRESENTATIONS. Where a gas company, with the permission of the municipal authorities, had laid down and was maintaining its pipes in the street of a city, and a street railway company was wrongly informed by the employes of the gas company respecting the location of the latter's pipes, so that the railway track was laid over them: *Held,* that the gas company could be estopped from disturbing the railway track even for the purpose of repairing its own property.

2. ———: ———: AGENCY. One who was temporarily employed as bookkeeper and collector was not an agent of the company in such a sense that his statement respecting the location of its gas pipes would be binding upon the company.

3. ———: SILENCE. An estoppel will be created by silence only when the persons by whose silence it is created had knowledge of the matter in regard to which they should have spoken.

*Appeal from Scott Circuit Court.*

WEDNESDAY, JUNE 7.

IN August, 1854, the defendant, the Davenport Gas Light Co., by permission of the City Council of Davenport laid its gas pipes in Brady street between Second and Fourteenth streets in said city.

Afterwards, in April, 1871, the plaintiff, the Davenport Central Railway Co., obtained permission of the city council of said city to lay and operate a horse railway upon said Brady street. Knowing that the gas pipe of the defendant had been laid in said street, and not knowing where in said street it was laid, and not wishing to lay its road-bed over said pipe, plaintiff applied at the office of the defendant to know where in said street its pipe was laid, representing that it was about to lay its road-bed in said street and wished to avoid defendant's gas pipe, and was told by one Phalon, who was acting as book-keeper and collector for the defendant, that the pipe was laid in the center of the street, and thereupon the plaintiff laid its road below Eighth street, a little east of the center of the street, but between Eighth and Eleventh streets, the track covers a part of the way the center of the street.

Soon after plaintiff commenced laying its track, one Baldwin, who was superintendent and secretary of the defendant Gas Company, was present where the said road-bed was being laid, and said to the plaintiff that, so far as he knew, said pipe was in the center of the street, but that there had been so much irregularity about laying said pipe he was not very certain about it.

Nearly two months were occupied in laying the road-bed and track, and the said Baldwin and the officers and agents of the company knew where the plaintiff was locating said road bed, and no one of them and no one for them made any objection to its location. The officers and agents of the defendant were in fact ignorant of the location of the gas pipe. After the road-bed and track were laid, and the plaintiff commenced operating the same, it was discovered that the gas pipe was

not laid all the way in the center of the street, but a part of the way on one side of the center, and the plaintiff's road-bed and track had, for the most part, been laid over the same. The defendant, having occasion to take up and repair its pipe, notified the plaintiff of its intention to do so. This suit is brought to enjoin the defendant from taking up or destroying the said railroad track for the purpose of removing its gas pipe. The plaintiff, as ground for such injunction, claims that defendant, by its representations as to the location of its gas pipe, is estopped from asserting its right to take up the same, to the inconvenience and detriment of the plaintiff.

The foregoing are the material facts as they appear from the petition, answer and affidavits. The cause coming on for hearing upon plaintiff's motion for a temporary injunction, the same was sustained and the court made the following entry:

"It is hereby ordered, adjudged and decreed that a temporary writ of injunction issue, enjoining said defendant and all persons acting under or for it, from in any manner taking up, disturbing or interfering with the road-bed and track of said plaintiff so as to prevent the passage of cars thereon, situate on Brady street, in the city of Davenport, between Third and Eighth streets on said Brady street, for the purpose of taking up its gas pipe or otherwise, except so far as to cut off and remove the ends of the cross ties projecting beyond and outside the rails, where this is necessary in order to obtain access to said gas pipes. And the defendant is in like manner restrained and enjoined from taking up or disturbing the said road-bed, except by cutting off the ends of the ties as aforesaid, between said Eighth street and said Eleventh street, where said road-bed does not so cover the center line of said street as to materially interfere with the taking up of said pipe of defendant, where said pipe is located in the center of said Brady street."

From the order granting the said preliminary injunction the defendant appeals.

*Putnam & Rogers*, for appellant.

*Bills & Block*, for appellee.

ADAMS, J.—In this case the plaintiff, a street railway company, having laid its track on Brady street in the city of Davenport, over the gas pipes of the defendant laid beneath the surface of the street, seeks to enjoin the defendant from removing or disturbing said track in order to obtain access to its pipes for the purpose of making repairs thereon.

1. ESTOPPEL:
street railway:
misrepresen-
tations.

The gas company is the elder of the two companies, and it is not denied by plaintiff and appellee that the rights of the gas company in the street are prior and paramount to those of the plaintiff, unless the gas company by its representations and conduct has created an equitable estoppel, whereby it has precluded itself from claiming that its rights are paramount. The equitable estoppel upon which the plaintiff relies arises, it is alleged, partly out of the representations of the defendant's officers and agents, and partly out of the defendant's silence and failure to object to the location of the track while it was being laid. This leads us to consider first the character of the representations and the capacity in which the persons were acting who made them. As to the facts there is very little if any controversy.

The plaintiff claims that it relied in the first instance upon the representations of one Phalon, who, on being told by the plaintiff's agent that it was about to lay its track in Brady street, and wished to avoid defendant's pipes, informed said agent that the pipes were laid in the center of the street.

It is not denied that Phalon did so state. The plaintiff having a right to lay its track in the street, as much so as the defendant had a right to lay and maintain its pipes in the street, it was the plaintiff's right to demand of the defendant information in regard to the location of the pipes. We are inclined to think, too, that it was the defendant's duty, in view of the rights which others might acquire in the street, to know the precise location of the pipes and be able to give correct information to those who had a right to demand it. If we are correct, and the company did wrongly represent the location of the pipes so as to lead plaintiff to lay its track over them when it was seeking to avoid them, and seeking information

from the defendant for the purpose of avoiding them, then we think the defendant would be estopped from claiming the right to disturb the plaintiff's track, even though the defendant was mistaken in regard to the location of the pipes at the time the representations were made. Much importance, therefore, is to be attached to the capacity in which Phalon was acting.

Conceding that it is the duty of the officers of the company to know, either from excavations made for repairs, or the records of the office, or the traditions of the company, where the pipes are located, if they undertake to give information in regard to the matter, we cannot say that such duty rests upon a mere employe, and certainly not upon a person acting merely in the capacity of book-keeper and collector. As to what capacity Phalon was acting in, it may be claimed that there is some conflict in the affidavits. Paddock, an employe of the plaintiff, being foreman of the hands who were laying the track, and the man who was sent to Phalon to obtain information about the location of the pipes, says that Phalon was acting as assistant superintendent, book-keeper and general agent for the gas company. Without stopping to inquire whether his representations would bind the company even if he were so acting, we have to say that we are satisfied that Paddock was mistaken. On this subject we have the affidavit of Geo. L. Davenport, the president of the gas company, who states that "Phalon was first introduced into the office of the company by Thomas Dermody, Baldwin's predecessor as superintendent, as the clerk or employe of said Dermody to assist him in keeping the books, and was employed by said Dermody on his own responsibility, and as his own personal clerk; that after said Dermody's death, said Phalon continued in the office for a time under Baldwin, as book-keeper and collector, until said Baldwin became familiar with the details of the business; that Phalon never had any authority to represent said company or bind it by his statements in respect to any matter whatever."

As Davenport is uncontradicted by any person showing any reasonable means of knowledge in regard to Phalon's powers,

The B. & M. R. R. Co. v. Cliugman.

we must take his affidavit as true. We are of the opinion, therefore, that if the estoppel exists, it must be found elsewhere than in the representations of Phalon.

The only other person who said anything about the location of the pipes was the superintendent, Baldwin, and what he said about it should have created distrust in regard to their location rather than confidence. He said that they were in the center of the street so far as they knew, but that there had been so much irregularity about laying the pipes he was not certain about it.

The only remaining ground of estoppel is the knowledge, on the part of the defendant's officers, that the track was being laid, and their failure to interpose any objection to its location.

3. ——: silence.

An estoppel may, of course, be created by silence, but not where, as in this case, there is no evidence that the persons whose silence it is claimed created the estoppel had knowledge of the matter in regard to which it is claimed that they should have spoken.

We think the Circuit Court erred in granting the injunction.

REVERSED.