WESTON & CO. v. DUNLAP ET AL.

1. **Mechanic's Lien**: SALE OF PROPERTY. Where the party entitled to a mechanic's lien fails to file the same until after the lapse of ninety days, during which time the property has passed to an innocent purchaser, he is not entitled to enforce his lien against such purchaser, and the rule is not varied by the fact that the vendee took the property under a bond for a deed, and made no actual payment, but simply executed his note for the purchase price.

*Appeal from Davis Circuit Court.*

THURSDAY, DECEMBER 12.

ACTION to enforce a mechanic's lien. The debt was contracted by the defendant Dunlap for materials furnished in the erection of a building upon the premises in question, which premises have since become the property of the defendant Moore. Judgment was taken against Dunlap by default. Moore defends against the lien. The last item in the plaintiff's account was furnished May 24, 1875. No statement for a lien was filed until November 11, 1875. In the meantime the property changed hands three times. Dunlap, at the time he erected the building, had purchased the premises of one Glenn, and had taken a bond for a deed. Afterward he made a trade with Glenn, whereby he surrendered his claim upon the property, and was released from all claim for purchase money. Glenn then sold the premises to one Cammack, who gave his note therefor and took a bond for a deed. Glenn transferred the note to the defendant Moore, and afterward Cammack conveyed his interest in the premises to Moore in payment of the note. At the time Cammack bought the premises and gave his note therefor he had no knowledge, actual or constructive, that the plaintiffs claimed a mechanic's lien upon the premises; but he acquired such knowledge before his sale and conveyance to Moore. The foregoing are the more important facts of the case. Some other facts

which are relied upon by the plaintiffs will be stated in the opinion. The court dismissed the plaintiffs' petition as against Moore, holding that he acquired the premises free from the lien. The plaintiffs appeal.

*Traverse & Eichelberger*, for appellants.

*Trimble, Carruthers & Trimble*, for appellees.

ADAMS, J.—The doing of work or the furnishing of materials is of itself constructive notice of the mechanic's lien for ninety days after the last item of materials furnished or work done. After that, if the mechanic desires to give constructive notice, he must file a statement with the clerk of the District Court. If he neglects to do so, and in the meantime the premises are sold to a person who purchases in good faith, without notice, the lien is defeated. Code, § 2137. The only question in this case is as to whether Cammack's purchase was such as to defeat the lien. The plaintiffs deny that it was. They base their denial in the first place upon certain facts which remain to be stated. It appears that at the time Glenn sold the property to Cammack, and gave him a bond for a deed, Glenn himself was only the equitable owner of the property, the legal title being in one Findley. It also appears that Glenn had knowledge of the plaintiffs' lien. Now such being the fact the plaintiffs maintain that, although Cammack may have purchased without notice, still, as he purchased merely an equitable title, which was subject to the lien before the purchase, it must be held to be subject to it afterward. They cite *Chew v. Barnett*, 11 Serg. & Rawle, 389; *Dupont v. Wertheman*, 10 Cal., 354; *Goldsborough v. Turner*, 67 N. C., 403; *Boone v. Chiles*, 10 Peters, 177; *Vattier v. Hinde*, 7 Peters, 252.

In *Chew v. Barnett* the court, stating clearly the doctrine upon which the plaintiffs rely, said: "Every equitable title is incomplete on its face. It is, in truth, nothing more than a title to go into chancery to have the legal estate conveyed,

1. MECHANIC'S lien: sale of property.

and, therefore, every purchaser of a mere equity takes it subject to every clog that may lie on it, whether he has had notice of it or not." We need not stop to determine to what extent the doctrine of that case is supported by the general current of decisions. It is certainly subject to some qualifications, and with those qualifications the opinion from which we have quoted can hardly be adduced as authority in the case at bar. The purchaser of an equity without notice may protect himself against a prior equity by obtaining the legal title, even though he obtain it after notice of the prior equity. *Campbell v. Brackenridge*, 8 Blackf., 471; *Gibler v. Trimble*, 14 Ohio, 423; *Edmondson v. Hays*, 1 Overt. (Tenn.), 509; *White v. Dougherty*, Mart. & Y. (Tenn.), 309; *Brown v. Welch*, 18 Ill., 343.

The doctrine that the purchaser of an equity, though without notice, takes subject to a prior equity, is based upon the rule that he who is prior in time is prior in right. But it is a technical rule, and, inasmuch as the subsequent purchaser's *conscience is not affected*, he may obtain the legal title, and a court of equity will not divest him of it. Cammack acquired the legal title from Findley.

Besides, it appears to us that a proper construction of the statute would require us to hold that the plaintiffs' lien was divested at the time of Cammack's purchase from Glenn. The statute provides for notice of the lien by record. Where the lienholder fails to give such notice, and the property passes to an innocent purchaser, he should not be heard to complain if he is not permitted to assert his lien against such purchaser; and, generally, we think the true rule to be that where a person purchases an equitable title, without notice, he takes it, as he would a legal title, divested of all liens thereon of that character that constructive notice of them may be given by record. This rule was held in *Bellas v. McCarty*, 10 Watts, 13; *Flagg v. Mann*, 2 Sumner, 486.

But it is insisted by appellants that Cammack's purchase from Glenn did not divest the plaintiffs' lien, because he made no actual payment for the property. They cite *Kitteridge v.*

*Chapman*, 36 Iowa, 348. In that case the court say: "An actual payment is in general necessary to the character of a subsequent *bona fide* purchaser for value, and giving a security or bond, or other obligation for payment, is not sufficient." But the court further say: "In holding that actual payment is generally necessary to the character of a purchaser for value, we do not mean to decide that when the purchaser has executed negotiable securities, which have been actually negotiated so as to render him liable thereon to the holder, he would not in such case be entitled to protection as a *bona fide* purchaser."

In *Partridge v. Chapman*, 81 Ill., 137, the purchaser had given his negotiable notes for a part of the purchase money, which had been negotiated. It was held that he was entitled to the same protection that he would have been if he had paid the whole purchase money in cash.

In the case at bar Cammack's note had been negotiated to Moore. While it appears that at the time this action was commenced, Moore had bought the premises of Cammack, and as the consideration thereof had surrendered to him the note, yet that circumstance is immaterial. If Cammack could not have protected himself with the note outstanding, provided the lien had then been enforced, then the lien could not have been enforced. So the only question is as to whether Cammack could have protected himself against the note if the lien had been enforced before he took it up. The appellants maintain that he could. Precisely how he could is not pointed out. They cite and rely upon *Kitteridge v. Chapman*. That is one of a line of authorities holding what may now be regarded as the settled doctrine of this country, that where a person purchases and takes a conveyance of real property without notice from a person who holds merely the legal title, and is not the owner of the property in equity, and the purchaser has paid but part of the purchase money, he shall not hold the property, but have a lien for the amount paid; and if he is in possession he cannot be divested of his title or pos-

session until reimbursed. In addition to the authorities cited in *Kitteridge v. Chapman,* see *Lewis v. Beatty,* 32 Miss., 52; *Pickett v. Barron,* 29 Barb., 505.

Such purchaser, then, may have his action to enforce his lien, or he may wait until the owner of the equitable title offers to reimburse him. But these cases are not applicable to the case at bar. The plaintiffs do not claim to be the owners of the property, but merely to have a lien upon it. The ownership, legal and equitable, became vested in Cammack and afterward passed to Moore. A court of equity would not have vested the plaintiffs with the title and right of possession even if they had tendered to Cammack the amount of his note, nor could Cammack have been required to treat himself as a paramount lienholder to the amount of the note. The principles involved in this case are entirely different from those involved in *Kitteridge v. Chapman,* and in the cases on which it is based. We have a case where a court is asked to enforce a lien against a purchaser without notice, and the ground of the application is that enough of the purchase money remains unpaid to discharge the lien.

If the purchase money were due to Glenn, the vendor, it is possible that an action in equity might be maintained against him and Cammack, and a decree rendered that of the purchase money enough should be paid by Cammack to the plaintiffs to discharge their claim. This would certainly appear to be so if the plaintiffs' claim were a claim against Glenn, and the plaintiffs had taken a mortgage from him upon the property before his sale to Cammack, and they had failed to record the mortgage, or if the plaintiffs' claim was for purchase money and they held a vendor's lien. In such case we think a court of equity would not only give the plaintiffs a decree for the purchase money due from Cammack to Glenn to the amount of their claim, but would subrogate them to the rights of Glenn still further, and allow them the benefit of his vendor's or other lien, if he held any. *Duphey v. Frenage,* 5 Stewart & Porter (Ala.), 215. If Glenn had no

lien the plaintiffs could acquire none, for the case must proceed upon the theory that Cammack, being an innocent purchaser, cannot be placed in any worse position by the enforcement of the plaintiffs' equity. *Macomber v. Peck*, 39 Iowa, 351.

In the absence of a lien in favor of Glenn the plaintiffs could only have a decree that the purchase money, to the amount of their claim, should be paid to them instead of Glenn. But the plaintiffs are not seeking a decree to divert to themselves the payment of purchase money, nor are they seeking subrogation to Glenn's lien, if he ever had any. They are seeking simply to enforce what they claim as their own lien, and by an immediate execution sale of the property. If they had brought an action simply to divert to themselves what would otherwise be payable from Cammack to Glenn, and to obtain the benefit of Glenn's lien, the court would take notice of the terms of payment, as fixed by Cammack's contract, and render decree accordingly. Whatever time Cammack had stipulated for would, of course, have been given him. When the time expired payment to the plaintiffs would, under the decree, have operated *ipso facto* as a discharge to that extent of Cammack's obligation to Glenn. The enforcement of a mechanic's lien as such affords no such protection to an innocent purchaser of the premises.

According to the appellants' theory Cammack should have paid at his peril, taking his chances, not only in regard to the validity of the plaintiff's claim, but in regard to the amount due, and then have waited to be sued on his note, when he should have fought out his protection as best he could by plea of set-off, or failure of consideration, or something else. If the note had long to run (in this case it was said to be payable in three years from date) it is evident that it would not only be improper to require payment in advance of maturity, but improper to subject Cammack to the chances of his witnesses being dead or missing whom he might need in maintaining his defense. Besides, no innocent person should be put in a position of being obliged to wait until he is sued

upon a debt. It is the right of every debtor to pay his debt whenever his creditor will accept payment, and if he can pay better in property than in cash it is his right to pay in property. If garnished, or made defendant in an equitable action, as above described, his obligation may in that way be transferred; but still he may settle with the new creditor as he and the new creditor agree.

We are of the opinion that this kind of an action cannot be maintained against an innocent purchaser while his note for purchase money is outstanding. It could not, then, have been maintained against Cammack. The lien, then, was divested when the property passed to Cammack.

AFFIRMED.