105 N. Y. 202, 11 N. E. 642, 59 Am. Rep. 492; Searles v. Manhattan R. R. Co., 101 N. Y. 661, 5 N. E. 66.

[2] The next difficulty is with the notice, which describes the place where the accident happened as follows:

"The claimant herein, Naomi Van Hovenburg, was walking on the left-hand side of Euclid avenue, in the borough of Brooklyn, city of New York, going in the direction of Liberty street, and when she arrived at Euclid avenue about 100 feet from Liberty avenue."

The objection to this notice is that it does not state with any degree of reasonable certainty "the place where the injury was sustained." From this description in the notice it is impossible to say whether the accident happened on Euclid avenue *east* of Liberty avenue or on Euclid avenue *west* of Liberty avenue. The wording of the notice is very vague and indefinite. Plaintiff says therein that she was walking "on the left-hand side of Euclid avenue." There are two left-hand sides to the street in question, dependent entirely as to whether a person is proceeding in an easterly or westerly direction. I think the notice is clearly insufficient and comes within the rule set forth in the following cases wherein notices of this character have been pronounced defective: Purdy v. City of New York, 193 N. Y. 521, 86 N. E. 560; Learned v. Mayor, etc., 21 Misc. Rep. 601, 48 N. Y. Supp. 142; McGlorey v. City of New York, 143 N. Y. Supp. 1128, decided by the Appellate Division, Second Department, October 24, 1913.

The notice in the McGlorey Case states that the accident happened at the northeast corner of a certain street, while the proof showed that it was the southeast corner. The trial court, Mr. Justice Maddox, in dismissing the complaint, held that the notice was insufficient, and the decision was unanimously affirmed by the Appellate Division.

The notice in the present case is far more vague and uncertain, and to my mind is not even a reasonable compliance with the law.

Motion for a new trial denied.

---

In re TITLE GUARANTEE & TRUST CO.

(Supreme Court, Appellate Division, First Department.   December 19, 1913.)

1. WILLS (§ 532*)—CONSTRUCTION.
   Under a will bequeathing a certain sum in trust to pay the income to a certain person with remainder over "unto the children then living of my sons, C. H. B. and W. C. B., and the issue of such as may have died leaving issue then surviving, per stirpes and not per capita," the testator's five surviving grandchildren, two the issue of one son and three the issue of the other, took equal shares, notwithstanding the punctuation would indicate otherwise, where other provisions of the will and codicil, wherein similar bequests were made and a per stirpes clause appeared, showed testator's intention that such clause should apply only to surviving issue of his grandchildren and not to his grandchildren.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1145, 1146; Dec. Dig. § 532.*]

2. WILLS (§ 531*)—CONSTRUCTION—"PER STIRPES."
   The words "per stirpes" are not strictly applicable to named legatees, or legatees designated as a class, and are ordinarily, at least, appropriate

and are used with respect to substantial gifts to substituted legatees in the case of the death of a primary legatee.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1143, 1144, 1148–1152; Dec. Dig. § 531.*

For other definitions, see Words and Phrases, vol. 6, p. 5286.]

3. WILLS (§ 529*)—CONSTRUCTION—GIFT TO A CLASS.
    Where a gift by will is to a class, the legatees take share and share alike, unless it otherwise clearly appears that the testator intended a different division.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1142; Dec. Dig. § 529.*]

4. TAXATION (§ 872*)—TRANSFER TAX—EXEMPTION.
    Where a legacy was payable to beneficiaries, who were also contingent remaindermen, the exemption to which they were entitled under the transfer tax law was properly deducted from the value of the entire legacy to each of them and apportioned on each bequest in the proportion that it bore to the total bequest to the particular beneficiary.

    [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 872.*]

Appeal from Surrogate's Court, New York County.

Judicial settlement of the account of the Title Guarantee & Trust Company, as executor of William Buchanan, deceased. From that part of a Surrogate's decree (81 Misc. Rep. 106, 142 N. Y. Supp. 1070) ordering a distribution of the fund bequeathed by the tenth paragraph of the will of William Buchanan and apportioning the transfer tax, Charles L. Buchanan and J. Roderick Buchanan file separate appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William B. Symmes, Jr., of New York City (George G. Schreiber, of New York City, on the brief), for appellants.

Edward R. Greene, of New York City (Thomas Garrett, Jr., of New York City, on the brief), for respondent.

LAUGHLIN, J. [1] The testator appointed the Title Guarantee & Trust Company executor of his will. On filing its account the trust company asked for a construction of the tenth paragraph of the will, to enable it to distribute the part of the estate thereby bequeathed. That paragraph is as follows:

"I give and bequeath unto the Title Guarantee & Trust Company, a corporation organized under the laws of the state of New York, the sum of twenty thousand ($20,000) dollars, in trust, nevertheless, to invest and reinvest the same, and receive the proceeds thereof, and to pay over the net annual income thereof unto William N. Clem (in recognition of his thirty years' faithful service), for and during his natural life, and at the death of said William N. Clem, I give and bequeath the said sum of twenty thousand ($20,000) dollars, unto the children then living of my sons, Charles P. Buchanan and William C. Buchanan, and the issue of such as may have died leaving issue then surviving, per stirpes and not per capita.

"I direct that my executor shall pay out of my estate, to the said William N. Clem, from the time of my decease, a sum equal to interest at the rate of five (5%) per cent. per annum, upon the amount of said fund, from the time of my decease, until such fund is set apart in trust."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The beneficiary of the life estate predeceased the testator. The testator's son Charles survived him, and at that time had three children living. The other son died during the lifetime of his father, and left two children, who survived their grandfather. On the death of the testator, this fund immediately vested in his five grandchildren.

The question arising on the construction of the will is whether they took as share and share alike as a class share, or per stirpes, so that the two surviving children of the one son took one half of the fund in equal shares, and the three surviving children of the other son took the other half in equal shares. That question depends on the intention of the testator, to be ascertained from a consideration, not only of these particular provisions, but of all of the provisions of the will and codicils. If the testator intended that his grandchildren should take as a class, and he has so drafted the will as to make evident such intention, it should be given effect accordingly.

The grammatical construction of this paragraph, according to the manner in which it is punctuated, is that both the grandchildren and the issue of any deceased grandchild shall take per stirpes and not per capita. The reference to the death of a grandchild leaving issue surviving is set off by commas in a clause by itself. The ordinary grammatical construction of the sentences, therefore, with respect to the bequest to the testator's grandchildren, is the same as if the clause referring to the death of any of them and to their issue were omitted. The bequest would then be to the children of the testator's two sons, living at the time of his death, per stirpes and not per capita. That would be an unusual use of the words "per stirpes"; and such a bequest might indicate that it was not made to the grandchildren as a class, with a view to having each take an equal share, but that it was intended that the descendants of one son should together take the same share as the descendants of the other son.

An examination of the entire will and codicils shows, what is usually the case, that too much reliance cannot be placed upon the punctuation. By the ninth paragraph of the will, the testator set apart a fund of $25,000 for the benefit of another servant for life, with the remainder over to the same grandchildren as take the remainder under the tenth paragraph; and, while the phraseology of the bequest to the children of the two sons is precisely the same, the punctuation is not the same, and we find an additional comma between the words "died" and "leaving" in the clause relating to the death of a grandchild. We find in the seventeenth paragraph of the will two important provisions which aid in the construction of the clause in question. By that paragraph the testator set apart 8/28 of his residuary estate for the benefit of his son Charles and the latter's children, in the proportions therein stated, during life, with the remainder over to said children. The bequest of that remainder was in the form of a direction to the trustee, as follows:

"And at the death of the said Charles P. Buchanan, to pay over the principal thereof unto the children of the said Charles P. Buchanan, then living, and the issue of such as may have died leaving issue then surviving, per stirpes and not per capita."

The testator, by the same paragraph, also set apart 13/28 of his residuary estate as a trust fund for the benefit of his son William during life, with a direction to the trustee upon the death of William, or at the death of the testator should William predecease him, "to pay over the principal thereof unto his children then living, and the issue of such as may have died, leaving issue then surviving, per stirpes and not per capita."

It will be observed that in each of these instances the clause, by which, in the event of the death of one of the children of the testator, the bequest was to the issue of such child, was set apart by commas in a clause by itself, the same as in the tenth paragraph with reference to the death of a grandchild leaving issue.

By a second codicil, the testator revoked the seventeenth paragraph of his will and substituted a provision making the trust fund for the benefit of his son Charles and the latter's children 9/28 of the residuary estate, and he bequeathed the remainder to the children of Charles and the issue of any deceased child by precisely the same phraseology and punctuation as is contained in the tenth paragraph of the will. At the time of the execution of the second codicil, the testator's son William had died, and by the codicil a trust in 6/28 of the residuary estate was created for the benefit of the testator's grandson Howard Buchanan, the son of William, and the corpus was bequeathed to the grandson's children, and the issue of such of them as may have died, by precisely the same phraseology and punctuation as is contained in the tenth paragraph of the will; and, in the event that this grandson should die without issue, the testator gave the corpus of the funds to the appellant Adele Buchanan the sister of the grandson, one of the appellants, if living, and, if dead leaving issue then surviving, the testator gave and bequeathed the principal "to such issue, per stirpes and not per capita." The testator's son William left only these two children; and, with respect to this trust fund for their benefit, the testator provided in the codicil that, in the event of the death of both of them without issue, it should be divided "per stirpes and not per capita among those persons who at that time answer to the description of my next of kin." The codicil also contained a like provision setting apart 6/28 of the residuary estate primarily for the benefit of the testator's granddaughter Adele Buchanan, and the corpus of that fund was bequeathed to her issue, and in the event of her death without issue, to her brother, or to his issue, by like phraseology as in the case of the like trust fund primarily for the benefit of her brother.

With respect to the construction of the tenth paragraph, the fact that the bequest was to the children of the two sons leaves some room for argument that it could have been to them per stirpes; but when the two bequests herein quoted, found in the seventeenth paragraph and in the codicil not to the children of both sons, but each to the children of a different son, are considered, it is quite plain that there could have been no intention to have the clause "per stirpes and not per capita" apply to the bequest to the children of either son. By each of these bequests in the seventeenth paragraph and codicil, the testator gave the remainder to the children of one of his sons, and it

is perfectly obvious that in such case they would necessarily take per capita. The per stirpes provision therefore in those cases was only intended to apply to the issue of deceased grandchildren. The will was executed on the 23d day of April, 1908. The last codicil was executed on the 29th day of June, 1911. The grandchildren of the testator all appear to be of age now. It is to be borne in mind that the bequest of the remainder over in the tenth paragraph is to the grandchildren precisely as if they were named. He did not name any of them in the will. They do not take through their parents, but in their own right. Although they were all grown up, and presumably well known to the testator, it is possible that he thought that other grandchildren might be born before his demise. That doubtless explains why the grandchildren were not named; but the reason is not important. He intended, we think, to give this fund to his grandchildren as a class, in precisely the same manner as he gave the corpus of the respective trust funds in the seventeenth paragraph of the will and in the codicil to his grandchildren and the issue, in each case, of a particular grandchild. In that view, the clause "per stirpes and not per capita" would have no application to the bequest to the grandchildren, and should be confined to the bequest to their issue in case of the death of any of the grandchildren during the lifetime of the testator. Manifestly the testator intended that, if one of his grandchildren should die leaving issue, such issue should share in the corpus of the fund bequeathed by the tenth paragraph of the will; but, in order to limit the share that such issue would take to the share that the parent would have taken, it was necessary to provide, as he did, that they should take per stirpes and not per capita. Matter of Verplanck, 91 N. Y. 439; Ferrer v. Pyne, 81 N. Y. 282; Matter of Keogh, 112 App. Div. 414, 98 N. Y. Supp. 433.

[2] The words "per stirpes" are not strictly applicable to named legatees, or legatees designated as a class, and are ordinarily, at least, appropriate, and are used with respect to substitutional gifts to substituted legatees in the case of the death of a primary legatee. Matter of Keogh, supra; Jarman on Wills (2d Ed.) p. 1589; Robinson v. Shepard, 32 Bea. 665, 4 D. J. & S. 129; Matter of Verplanck, supra; Ferrer v. Pyne, supra.

[3] Where the gift is to a class, the legatees take share and share alike, unless it otherwise clearly appears that the testator intended a different division. Matter of King, 200 N. Y. 189, 93 N. E. 484, 34 L. R. A. (N. S.) 945, 21 Ann. Cas. 412; 2 Jarman on Wills (6th Ed.) p. 1711. We think that it does not so appear here, and therefore the punctuation may and should be disregarded. These views require a modification of the decree so as to provide that each of the grandchildren takes one-fifth of the fund.

[4] It is contended in behalf of the appellants that no part of the transfer tax should be assessed against their shares of the fund bequeathed by the tenth paragraph of the will, and that it should be apportioned over and paid pro rata out of the corpus of the trust funds created in other paragraphs of the will and of the second codicil of which they take in futuro, the remainder. The learned surrogate held

that the $5,000 exemption to which each of the grandchildren was entitled should be deducted from the value of the entire legacy to each of them respectively, and that the exemption should be apportioned on each bequest in the proportion that it bears to the total bequests to the particular beneficiary. On that theory the surrogate decreed that the executor should deduct from each grandchild's share of the fund bequeathed by the tenth paragraph of the will a portion of the transfer tax, in the proportion that the bequest bears to the total bequests to such grandchild; and that the transfer tax on the remainder of their respective interests in the estate should be paid out of the respective trust funds in which they are interested as remaindermen. With these views we agree without further discussion.

It follows that the decree should be modified as indicated, with costs to both parties payable out of the estate, and as so modified affirmed. All concur.