PEARL M. EGBERT, Appellant, v. GOLDIE EAGLE DUCK, Appellee.

No. 47203.

(Reported in 32 N. W. 2d 404)

MAY 4, 1948.

Lundy, Butler & Lundy, of Eldora, for appellant.

Burnstedt, Hemingway & Hemingway, of Webster City, for appellee.

MANTZ, J.—Plaintiff's action in equity is based upon claims which she makes as assignee-lessee in and to a lease to certain real estate located in Iowa Falls, Iowa, said lease having been entered into on April 1, 1942, between Mary Eagle, as landlord, and G. C. Egbert, plaintiff's assignor, as tenant, and in which lease the real estate described therein was leased for a period of ten years from and after March 20, 1942, at a stipulated monthly rental of $5.00. Plaintiff asked that her rights in and to said lease and the property described therein be confirmed.

The defendant filed a cross-petition alleging that she had acquired a fee remainder interest in and to such real estate by deed from Mary Eagle and Conrad Eagle, dated May 10, 1937; that Mary Eagle, the life tenant, died on March 21, 1946; that the death of the life tenant terminated said lease; that notice of termination had been given plaintiff then in possession; that plaintiff denied the claimed rights of the cross-petition and claimed rights superior by reason of such lease and refused to give cross-petitioner possession; that such claim and possession by plaintiff constituted a cloud upon cross-petitioner's title. Cross-petitioner prayed that her title in and to the leased premises be quieted; that the lease be declared terminated; that she be put in possession thereof, and for general equitable relief.

By answer, plaintiff controverted the allegations of the cross-petition; claimed that her status was that of a subsequent

purchaser without notice; admitted that the cross-petitioner was the owner of the fee; asserted that said cross-petitioner had ratified and acquiesced in said lease and that by acts and conduct had estopped herself to assert superior rights or claims in and to said lease, and asked for general equitable .relief. Thereupon plaintiff dismissed her petition and the cause was tried upon the issues raised in the cross-petition and pleadings subsequent thereto.

Following the trial the court found for cross-petitioner and decreed that the lease was of no force and effect following the death of the life tenant; denied plaintiff's claim that cross-petitioner had ratified and confirmed said lease or that she was estopped to question its validity. The court quieted title in and to the cross-petitioner and granted her the right of possession, reserving to plaintiff the right to remove the improvements from the leased premises. Plaintiff appeals.

The action is in equity and is triable here de novo.

I. The property involved is a part of two corner lots situated on a main street in the business district of Iowa Falls, Iowa. In 1937 it was owned by Mary and Conrad Eagle and it had been their home for many years. Their daughter, Goldie Eagle Duck, hereinafter referred to as appellee, had lived outside the United States for many years and was at that time living in Calgary, Canada. She visited her parents at Iowa Falls at rather infrequent intervals.

In April 1937 Mary Eagle leased a vacant part of said lots to G. C. Egbert for a period of five years from and after March 20, 1937, at a monthly rental of $5.00, payable in advance, giving the lessee the right to remove any building placed thereon at the termination of the lease or in case the leased property was sold. Egbert at once took possession and placed thereon a building 14 by 24 feet with an . 8-foot ceiling to be used as a hamburger or sandwich stand.

On May 10, 1937, Mary Eagle and Conrad Eagle deeded the two lots to appellee, reserving to grantors a life estate. This deed of conveyance was signed and was sent by registered mail to her in Calgary, Canada, where it was received by her on November 21, 1940. She held it in her possession thereafter and recorded it on July 6, 1944. Conrad Eagle died December

10, 1938, leaving his widow, Mary Eagle, as surviving life tenant.

On April 1, 1942, Mary Eagle leased the same property to G. C. Egbert for a period of ten years from and after March 20, 1942, at a monthly rental of $5.00, payable in advance. In April 1943 the lessee built a small addition to the building on the leased premises, the same being 8 by 12 feet with a 7-foot ceiling. On July 31, 1942, the tenant, G. C. Egbert, conveyed the property upon the leased premises, including the lease, to his wife, appellant herein. Mary Eagle consented to such sale and assignment. G. C. Egbert died August 21, 1942. In April 1944 a guardian was appointed for Mary Eagle. She was then seventy-eight years old and was suffering from physical infirmities. In June 1944 appellee became such guardian, succeeding her brother, Herman Eagle, the first guardian. In 1945 appellant remodeled the interior of the building and in 1946 built a small alcove thereon to house a "juke box". The rent was paid regularly to Mary Eagle and later to her guardian. Mary Eagle and appellee went to California on February 12, 1946, where Mrs. Eagle died March 21, 1946. The day she went to California appellant paid to appellee $15, being the rent to May 20, 1946.

When the five-year lease was made in 1937 appellee was living in Canada. She came from there to Iowa Falls about June 1, 1938, and stayed a month. She came back to Iowa in January 1942 and returned to Canada in April 1942. She came back in October 1943 and went back to Canada in January 1944. Her next return to Iowa Falls was in June 1944 and she did not again return to Canada.

During the five-year lease, made in 1937, G. C. Egbert built upon the leased premises a small building to be used as a sandwich shop at a cost of about $1,800, exclusive of the plumbing. Later, he insulated the roof and made some inside changes. All this was done while appellee was in Canada. In the spring of 1943 following the execution of the ten-year lease, the tenant built a small 8 by 12 foot storeroom addition to the sandwich shop. Appellee was out of the country at the time and did not return to Iowa Falls until this addition was com-

pleted. About a year following the recording of appellee's deed the tenant expended about $1,400 in remodeling the inside of the building. This was done while Mary Eagle was living. When the latter and appellee were in California, appellant built a small addition to the building for the purpose of housing a juke box. According to the certificate of the notary, the ten-year lease was acknowledged on October 22, 1942. It was filed for record October 6, 1945.

II. Appellant concedes that under the law a lease by a life tenant expires at the death of the life tenant. She contends, however, that in such cases a remainderman may by acts or conduct, express or implied, ratify and confirm such lease and thereby become estopped to question the validity of such lease. There is ample legal authority to sustain such claim. In this state and most other jurisdictions the rule followed is that the lease of a life tenant does not extend beyond the life of the life tenant. Following the death of the life tenant a changed situation exists relating to a lease executed by a life tenant. The remainderman can continue the validity of such a lease by consenting to its continuance, by acquiescing therein, or by such conduct, either express or implied, as to be estopped to question the continuance of such lease. Ray v. Young, 160 Iowa 613, 142 N. W. 393, 46 L. R. A., N. S., 947, Ann. Cas. 1915D, 258; Sanders v. Sutlive Bros. & Co., 163 Iowa 172, 143 N. W. 492; Scurry v. Anderson, 191 Iowa 1058, 183 N. W. 585, 16 A. L. R. 1090; Armstrong v. Rodemacher, 199 Iowa 928, 203 N. W. 23; Carman v. Mosier, 105 Iowa 367, 75 N. W. 323; Sanders v. Sutlive Bros. & Co., 187 Iowa 300, 174 N. W. 267, 6 A. L. R. 1503; 33 Am. Jur., Life Estates, Remainders, and Reversions, section 277.

III. It is contended by the appellant-lessee that the ten-year lease under date of April 1, 1942, made said appellant a purchaser for value; and that because the deed to appellee was not recorded until July 6, 1944, appellant is a purchaser without notice.

Section 558.41 of chapter 558, Code of 1946, is as follows:

"No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration,

without notice, unless filed in the office of the recorder of the county in which the same lies, as hereinafter provided."

■ The ten-year lease was between G. C. Egbert, husband of appellant, and Mary Eagle. The tenant assigned all his rights therein to appellant on July 31, 1942. As such assignee she had no higher rights thereunder than her assignor. Klassie v. Holt, 233 Iowa 826, 10 N. W. 2d 540; Fred Miller Brewing Co. v. Hansen, 104 Iowa 307, 73 N. W. 827; Arnd v. Grell, 200 Iowa 1272, 206 N. W. 613; Welch v. Taylor, 218 Iowa 209, 254 N. W. 299.

■ Before appellant can come within the provisions of the above-quoted statute (section 558.41, Code, 1946) she would be required to show: (1) that she was a subsequent purchaser (2) that she parted with a valuable consideration, and (3) that she was without notice of appellee's rights in the premises.

The lease provided that the rental was on a monthly basis, $5.00 per month to be paid in advance. The record shows that it was so paid. The question as to the rights of a subsequent purchaser who claims to be an innocent purchaser is discussed in the following cases: La Fon v. Grimes, 5 Cir., Tex., 86 F. 2d 809, 109 A. L. R. 156 (annotation on page 163); Kitteridge v. Chapman, 36 Iowa 348; Weston & Co. v. Dunlap, 50 Iowa 183; Reining v. Nevison, 203 Iowa 995, 213 N. W. 609; Sillyman v. King, 36 Iowa 207; Throckmorton v. Rider, 42 Iowa 84; Rush v. Mitchell, 71 Iowa 333, 32 N. W. 367; Long v. Garey Inv. Co., 135 Iowa 398, 112 N. W. 550; Dolan v. Newberry, 200 Iowa 511, 202 N. W. 545, 205 N. W. 205.

5 Tiffany on Real Property, Third Ed., 47, section 1280, states:

"The question whether a lessee is within the protection of the recording statute, so as to be able to assert the failure to record a prior conveyance, is one which is not calculated to arise, since a lessee, agreeing merely to pay a periodical rent, as is usually the case, could not well be regarded as a purchaser for value. If, however, he does pay value, he may come within the protection accorded to purchasers for value, the fact that the estate acquired by him is for years only instead of in fee simple being immaterial."

The question as to the rights of a subsequent purchaser who claims to be an innocent purchaser was discussed at length in the case of La Fon v. Grimes, supra. In an annotation in 109 A. L. R. 166, the matter is discussed at length and various authorities set out. We will set out the headnote dealing with partial payments of consideration in conveyances:

"The general rule is that a subsequent purchaser without notice who is protected by the recording laws as against a prior unrecorded deed or mortgage is not entitled to protection to the extent of the part of the consideration that he has not paid when he receives notice of the prior conveyance."

Among the cases cited in support of the rule above announced we find the early case of Kitteridge v. Chapman, supra. The holding in that case was later approved in Weston & Co. v. Dunlap, supra, wherein it was stated that the rule announced was regarded as the settled doctrine in this country. The above doctrine was approved in Reining v. Nevison, supra. We quote from the last-cited case: "To be entitled to protection as such a purchaser, he must have paid the purchase price before notice of the equity of the appellee Knowles." At page 1000 of 203 Iowa, page 612 of 213 N. W. Various other Iowa cases are cited, to wit, Sillyman v. King, 36 Iowa 207; Throckmorton v. Rider, 42 Iowa 84; Rush v. Mitchell, 71 Iowa 333, 32 N. W. 367; Long v. Garey Inv. Co., 135 Iowa 398, 112 N. W. 550. Appellant's ten-year lease granted her possession of the leased premises—the use thereof.

IV. Appellant argues that appellee is estopped to claim that the ten-year lease had no validity after the death of Mary Eagle, the life-tenant grantor, on March 21, 1946. She bases this upon the claim that during the period of such lease various improvements were made thereon by appellant and that appellee knew of such and did not object thereto and is therefore estopped by such conduct. She further claims that such acts and conduct on the part of appellee amounted to a ratification of the lease following the death of the life tenant.

Appellant pleads and argues an estoppel against appellee. The term "estoppel" has been variously defined. In 19 Am. Jur., Estoppel, section 2, we find the following:

"Speaking generally, however, it may be said that estoppel is a bar which precludes a person from denying or asserting anything to the contrary of that which has, in contemplation of law, been established as the truth, either by the acts of judicial or legislative officers or by his own deed or representations, either express or implied."

In the case of Goodwin Tile & Brick Co. v. DeVries, 234 Iowa 566, 568, 13 N. W. 2d 310, 312, 155 A. L. R. 346, we held that the "essential elements of equitable estoppel, or estoppel in pais, have been listed as false representation or concealment of material facts, made to one without knowledge of the real facts, with the intention that it be acted upon; and reliance [placed] thereon by the party to whom made, to his prejudice and injury", and that each element should be clearly proven. See, also, Smith v. Coutant, 232 Iowa 887, 6 N. W. 2d 421; Stookesberry v. Burgher, 220 Iowa 916, 262 N. W. 820; Beechley v. Beechley, 134 Iowa 75, 108 N. W. 762, 9 L. R. A., N. S., 955, 120 Am. St. Rep. 412, 13 Ann. Cas. 101; Anfenson v. Banks, 180 Iowa 1066, 163 N. W. 608, L. R. A. 1918D, 482; Macheak v. Adamson, 214 Iowa 446, 239 N. W. 574; Citizens State Bank v. Martens, 204 Iowa 1378, 215 N. W. 754; City Bank v. Alcorn, 188 Iowa 592, 176 N. W. 628; Baldwin v. Lowe, 22 Iowa 367; City Bank v. Radtke, 87 Iowa 363, 54 N. W. 435. The above-cited cases set forth rules and principles applied where estoppels are involved.

One of the fundamentals of estoppel is that the party against whom the claim is made intended that the party claiming the estoppel should rely to his prejudice on the acts alleged to create an estoppel. Hess v. Masters, 192 Iowa 1063, 186 N. W. 6; Davenport Cent. Ry. Co. v. Davenport Gas Light Co., 43 Iowa 301.

In the case of Anfenson v. Banks, supra, Weaver, J., speaking for the court, made a very comprehensive review of the cases dealing with the legal principles applied in cases where it is claimed that there was an estoppel in pais. Therein are set forth the legal principles applied when such claim was made. Many cases from other jurisdictions in addition to those

of our own state were discussed. He said at page 1095 of 180 Iowa, page 617 of 163 N. W.:

"Examinations of the precedents show that, in general, the claim of an estoppel in pais is based upon alleged positive acts, declarations, statements or admissions by the party sought to be charged; or upon the alleged silence of such party under circumstances in which, as an honest man, with due regard for the rights of others, he was in duty bound to speak."

See, also, Garretson v. Equitable Mutual Life and Endowment Assn., 93 Iowa 402, 61 N. W. 952.

We agree with the trial court that the evidence does not warrant a finding that appellant has sustained her claim of estoppel. The ten-year lease expired when Mary Eagle died March 21, 1946. Appellee did not know of such lease until shortly before the death of the life tenant. The first improvements were placed on the leased premises over three years before appellee received the deed granting her a remainder interest in such leased premises. She was in Canada when such were made. Appellee received a remainder interest in the property by the deed from her parents and placed it of record July 6, 1944. When the small addition was put on in 1943 appellee was in Canada and did not know of it until it was completed. When the place was remodeled and the "juke box" addition was put on in 1946 appellee's deed was on record and was notice to appellant.

The record fails to show any act or conduct on the part of appellee which would indicate that either G. C. Egbert or appellant acted thereon to their prejudice. Neither does it show any representations made to them which would mislead or deceive them to act to their prejudice. The record shows that immediately on the death of the life tenant the appellee-remainderman promptly gave notice to appellant that the lease was terminated by such death. She accepted no rentals thereafter and expressly refused to accept any. The nature of the improvements was such that the parties could well know that such were not permanent and were there placed with the idea that they would be or were to be removed.

The appellee was under no duty to speak when she had

no title and could not be expected to object to improvements placed on the leased premises in her absence and without her knowledge.

Applying the principles as set forth in the cases above cited to the evidence as shown in the record, we hold that appellant's claim of estoppel is not shown and that same was properly denied.

The decree of the trial court in favor of defendant was right and it is affirmed.—Affirmed.

All JUSTICES concur.