**In the Matter of the ESTATE of Isabell LUKE, Deceased.**

**Alfred LUKE, Co-Executor of the Estate of Isabell Luke, Deceased, Appellee,**

**v.**

**Hilda M. LUKE, Co-Executor of the Estate of Isabell Luke, Deceased, Hilda M. Luke, Mildred C. Luke, Alvin C. Luke, Verlyn D. Bradley, Maxine J. Cranston, Joseph B. Bradley, and Delbert D. Luke, the legatees, devisees, and beneficiaries under the Will of Isabell Luke, Deceased, and her Estate, Appellants.**

**No. 54086.**

Supreme Court of Iowa.

Feb. 9, 1971.

Fitzgibbons Brothers, Estherville, for Verlyn Bradley, defendant-appellee, appellant on cross-appeal.

James, Greer, Nelson & Bertell, Spencer, for Alfred Luke, co-executor of the Estate of Isabell Luke, plaintiff-appellee, appellant on cross-appeal, and Mildred C. Luke, Alvin C. Luke and Maxine J. Cranston, defendants-appellees, appellants on cross-appeal.

Arthur W. Smith, Emmetsburg, for Hilda M. Luke and Delbert D. Luke, defendants-appellants, appellees on cross-appeal.

RAWLINGS, Justice.

Plaintiff co-executor brought declaratory judgment action for construction of decedent's will, and for determination as to distribution of rents and apportionment of taxes between estate of deceased life tenant and remaindermen. From decree accordingly entered by trial court, all parties appeal. We reverse and remand for further proceedings.

Isabell Luke died November 2, 1965. By the terms of her will, executed December 12, 1962, slightly in excess of one-half her property was bequeathed to Alfred C. Luke, a surviving son, the balance to six named persons.

These are the pertinent portions of the will:

"I.

"I hereby direct that all of my just debts and funeral expenses be first paid out of my estate.

"II.

"I hereby devise and bequeath unto my son, Alfred C. Luke, the elevator that is on the crib on his farm at this time.

"III.

"Subject to paragraph II hereof, I devise and bequeath one-half of all of the real estate and personal property of which I die seized and possessed to my son, Alfred C. Luke.

"IV.

"Subject to paragraph II hereof, I hereby devise and bequeath one-half interest in all of the real estate and personal property of which I die seized or possessed to the following named persons, to-wit:

"Delbert D. Luke
Maxine J. Cranston
Verlyn D. Bradley
Alvin C. Luke
Hilda M. Luke
Mildred C. Luke

"per stirpes and not per capita."

Inceptionally the issue to be resolved is whether those residual beneficiaries designated in Paragraph IV *supra*, take in equal parts or otherwise.

Because it probably discloses relationship of the parties more clearly than any narrative explanation, the family tree, as it relates to Paragraph IV, *supra*, is portrayed by this chart:

X   Deceased
*Italics—Lineal Descendants*
CAPITALS—NAMED HEIRS

Trial court decreed the residuum be thus divided:

One-Fifth—Delbert D. Luke
One-Fifth—Verlyn D. Bradley
One-Fifth—Hilda M. Luke
One-Fifth—Mildred C. Luke
One-Tenth—Maxine J. Cranston
One-Tenth—Alvin C. Luke

[A3657]

On appeal all parties challenge this order of distribution and in so doing advance the following alternatives:

1. By plaintiff Alfred Luke, co-executor, and defendants Mildred C. Luke, Alvin C. Luke, Maxine J. Cranston—divide the residual estate equally between the six named persons.

2. By defendants Hilda M. Luke and Delbert D. Luke—divide the residual estate into four equal shares with one share going to each group representing children of decedent, the remaining one-fourth to Hilda M. Luke.

3. By defendant Verlyn D. Bradley— divide the residual estate into three equal shares distributable among the representatives of decedent's three children.

The problem thus presented will be first considered.

I. A will contest is not here involved. The Code 1966, Sections 633.308–633.320; see In re Estate of Ditz, 255 Iowa 1272, 1278–1279, 125 N.W.2d 814; Smith v. Negley, 304 S.W.2d 464, 468 (Tex.Civ.App.); Black's Law Dictionary, Revised Fourth Ed., page 1773.

Neither are we confronted with an action for involuntary appointment of guardian or establishment of any contested claim.

Despite a nondeterminative pre-hearing colloquy between trial court and counsel, this matter was statutorily triable as in equity. The Code 1966, Section 633.33. It is accordingly reviewable de novo. Ia.R. Civ.P. 334, 344(f) (7); In re Estate of Sheimo, 261 Iowa 775, 778, 156 N.W.2d 681.

II. In matters such as this it is well established the intent of testatrix is our polestar, to be gleaned from a consideration of language employed in the will as a whole, and other relevant factors. McCarthy v. McCarthy, 178 N.W.2d 308, 310 (Iowa); In re Estate of Lamp, 172 N.W.2d 254, 256–257 (Iowa).

At the outset it is evident, relative placement of the term "per stirpes and not per capita" is of more than minimal significance.

Noticeably testatrix did not say the residuum of her estate would pass per stirpes and not per capita to the following named persons. Rather she devised and bequeathed same to the parties designated followed by the qualifying provision. This means testatrix did not intend the stirpital clause be applied in the primary sense as a limitation on the bequest to those named. See Johnson v. Swann, 211 Md. 607, 126 A.2d 603, 606 (Md.); St. Louis Union Trust Company v. Greenough, 282 S.W.2d 474, 478 (Mo.); In re Title Guarantee & Trust Co., 159 App.Div. 803, 144 N.Y.S. 889, 893, aff'd 212 N.Y. 551, 106 N.E. 1043; Annot. 13 A.L.R.2d 1023, 1041; 96 C.J.S. Wills § 709.

We find Paragraph IV clearly expresses an intention that in the event any one or more of those specifically identified should die, then secondarily, their respective heirs would take per stirpes the share which such deceased party would have received if living.

Stated otherwise, the term "per stirpes" as here employed by testatrix was not made applicable to the named legatees, being used only with regard to secondary or substituted beneficiaries in event of a primary legatee's death. See Johnson v. Swann, *supra*; In re Squires' Will, Sur., 102 N.Y.S.2d 735, 740.

An examination of the will in its entirety reveals no expression of a contrary intent.

III. This finding is further supported by the fact that there could in no event be a true stirpital distribution as between the six named parties.

As this court said in Clarken v. Brown, 258 Iowa 18, 26, 137 N.W.2d 376, 381: "A devise per capita means by a number of individuals equally or share and share alike. A devise per stirpes is where those of more

remote kinship to decedent take by right of representation."

In that regard it is self-evident, Hilda M. Luke and Mildred C. Luke, daughters-in-law, could not take from Isabell Luke by stock or as lineal descendants. See The Code 1966, Sections 633.210–633.226. Resultantly the adoption of any view to the effect testatrix intended the Paragraph IV gift be to those named, per stirpes, would necessitate a strained interpretation under which the named daughters-in-law would, in effect, be either excluded or placed in a separate class by themselves. Nothing in the will indicates any such intent. Rather the words used specifically identify those who are to take as individuals, not by right of representation. See 4 Bowe-Parker: Page on Wills, § 36.11. Furthermore an examination of the record discloses nothing which dictates adoption of any other conclusion.

We now hold testatrix clearly intended the residual estate described in Paragraph IV of her will pass to those named, per capita, the per stirpes phrase being used only as a provision for substitute legatees. Trial court erred in holding otherwise.

IV. Next to be considered is trial court's order relative to distribution of rent proceeds between decedent's estate and remaindermen.

In this area we deal not with property owned by Isabell Luke, decedent, but rather that realty in which she held a life estate under the terms of her deceased husband's will.

The remaindermen here involved are Verlyn D. Bradley, Hilda M. Luke, Delbert D. Luke, and Alfred C. Luke.

Prior to trial all parties stipulated, in part:

"(10) That the life tenant, Isabell Luke, did not actually farm the land involved, but leased it to the persons who did farm it. The terms of the lease were as follows:

"(a) On the farm of Alfred C. Luke, the Landlord Isabell Luke was to receive two-fifths of all crops with no cash rent.

"(b) On the three hundred twenty acre farm, the lease provided for crop share on a fifty-fifty basis between the Landlord and Tenant and with cash rent.

"(c) All leases ran from March 1st to March 1st.

"(d) The oats and beans had been combined at the time of the death of Isabell Luke.

"(e) At the death of Isabell Luke, the corn was mature and was being picked at the time of her death. Tenants were to deliver all of the beans to market.

"(11) That any pro-rata division of either income or expenses as between Verlyn D. Bradley and Hilda Luke and Delbert D. Luke should be pro-rated on the basis of fifty-two per cent to Hilda Luke and forty-eight per cent to Verlyn Bradley with respect to the three hundred twenty acre tract, which was divided between them in accordance with the Last Will and Testament of Albert C. Luke."

It thus appears Hilda M. Luke, Delbert D. Luke, and Verlyn D. Bradley are remaindermen in relation to the three hundred twenty acre farm referred to above.

By reason of the fact that all individuals concerned here argue only the matter of crop rentals, we shall confine ourselves accordingly. Ia.R.Civ.P. 344(a) (4) (Third). See Farm Service Co. of Emmetsburg v. Askeland, 169 N.W.2d 559, 560 (Iowa).

At common law, where a tenant for life gave a lease rendering a yearly rent, and died in course of the year before the day appointed for payment of rent, it could not be apportioned because the contract was an entirety. But the tenant might electively quit the premises on the death of his lessor, paying no rent to anyone for occupation since the last day appointed for payment of rent. See Wilson v. Hagey, 251 Ill. 452,

96 N.E. 277, 278; 51 Am.Jur.2d, Life Tenants and Remaindermen, § 133; Annot. 6 A.L.R. 1506, 1508.

Apparently what is now designated § 562.1, Code 1966, was enacted for the purpose of abrogating the harsh common law rule in such cases. That statute provides:

"The executor of a tenant for life who leases real estate so held, and dies on or before the day on which the rent is payable, and a person entitled to rent dependent on the life of another may recover the proportion of rent which had accrued at the time of the death of such life tenant."

It thus appears the *right* of apportionment now exists, but that alone is not determinative of the problem at hand.

■ As a preface to further discussion it should be understood that on the death of a life tenant all interest of his lessee ceases, except the right to remove emblements, i. e. corn and other annual crops. Egbert v. Duck, 239 Iowa 646, 650, 32 N.W. 2d 404. See also In re Andersen's Estate, 118 N.W. 1108, 1110 (Neb.).

The question now posed is whether decedent's estate representatives or the remaindermen are entitled to the landlord's rental share of all grains.

Instantly the matter of respective rights to unmatured crops is not involved.

■ As heretofore revealed the oats and beans had been harvested, the corn matured and in the process of being picked. That means the growing season had ended. In other words, all crops, including corn, had taken on the character of personalty, being no longer regarded as part of the realty at time of testatrix' death. Schulz v. Hoffman, 254 Iowa 868, 873–874, 118 N.W.2d 532; Hecht v. Dettman, 56 Iowa 679, 680–681, 7 N.W. 495, aff'd on Rehearing 56 Iowa 679, 10 N.W. 241.

From this it follows, the right to all 1965 crop shares reserved as rent to the life tenant passed in their entirety to her estate, not to any remaindermen. See Gentry v. Alexander, 311 Ky. 344, 224 S.W.2d 143, 145–147; In re Mischke's Estate, 136 Neb. 875, 287 N.W. 760; Annot. 125 A.L.R. 280.

That means, trial court's method of apportioning crop rentals between the executors and remaindermen was erroneous.

V. Appellants Hilda M. Luke, Delbert D. Luke, and inferentially Verlyn D. Bradey, contend trial court erred in pro-rating the 1965 taxes payable in 1966, between the life tenant's estate and the remaindermen. These appealing parties take the position this was the obligation of Isabell Luke alone, and in turn her estate.

The matter of liability for real estate taxes as between vendor and vendee is not here involved. See The Code 1966, Section 445.30; United States v. 3 Parcels of Land in Woodbury Co., Iowa, 198 F.Supp. 529, 532–533 (N.D.Iowa W.D.).

As in the case now before us, Gates v. Wirth, 181 Iowa 19, 163 N.W. 215, deals with a dispute between a life tenant and remainderman relative to the obligation, between themselves, for payment of real estate taxes. There, however, the life tenancy terminated in August. Under these circumstances we determined the remainderman, not the life tenant, was responsible for the taxes because the life estate terminated *before* current taxes became a lien. In so holding this court said in 181 Iowa at 26, 163 N.W. at 218:

"No one is under obligation to pay taxes until after the levy has been made; that is, until the amount chargeable is charged to the specific property. The duty to pay the amount thus fixed does not arise until the 1st of January following.

"*The duty to pay,* in order to discharge the land, as between title owners, *rests, generally speaking, on the owner of the*

*land at the time the annual tax to be levied is actually ascertained, fixed, and levied, and this obligation to pay in no event arises until the work of the board of supervisors was completed in September.* This is the first time that the specific annual tax for the year became a lien upon the property, and this is the first time that an obligation rested on any one to discharge the tax in order to free the land from the burden." (Emphasis supplied).

See The Code 1966, Sections 444.9, 445.28; Cornelius v. Kromminga, 179 Iowa 712, 715, 161 N.W. 625. See generally United States v. 3 Parcels of Land in Woodbury Co., Iowa, 198 F.Supp. 529, 532–535 (N.D.Iowa W.D.); Restatement, Property, § 129; 51 Am.Jur.2d, Life Tenants and Remaindermen, § 251; Annot. 45 A.L.R.2d 522, 529. See also The Code 1966, Section 633.352.

Here the life tenancy terminated *after* current taxes became a lien, in September, against the subject property. The resultant obligation was thus imposed upon the life tenant's estate, not the remaindermen.

Trial court improperly pro-rated the 1965 real estate taxes between the life tenant's estate and the remaindermen.

VI. This action was proper and not unnecessarily commenced by Alfred Luke, co-executor of the Estate of Isabell Luke, deceased. Costs attendant upon this appeal are therefore taxed to said estate. See Court Rule 23.

Reversed and remanded for further proceedings consistent with this opinion.

All Justices concur.